**OEHM et al. v. MICHIGAN–WISCONSIN PIPE LINE CO.**

No. 10559.

United States Court of Appeals. Seventh Circuit.

Oct. 10, 1952.

Joseph D. Lawyer, John C. Lawyer, Hammond, Ind., Aaron H. Huguenard, South Bend, Ind., for appellant.

F. Kenneth Dempsey, South Bend, Ind., William N. Kenefick, Michigan City, Ind., for appellees.

Before MAJOR, Chief Judge, and KERNER and DUFFY, Circuit Judges.

MAJOR, Chief Judge.

Plaintiffs initiated this suit, entitled "Complaint in Ejectment," in the State Court of Indiana to recover possession of real estate and damages for its detention which, upon defendant's motion, was removed to the United States District Court. Defendant by answer denied the material allegations of the complaint and that plaintiffs were entitled to the relief sought. Defendant, also by its counterclaim, demanded specific performance of an agreement, alleged to have been made by plain-

tiffs, to convey to the defendant a right-of-way across plaintiffs' property for the installation and maintenance of defendant's gas pipe line.

The District Court, after trial and on November 19, 1951, made its findings of fact, conclusions of law and rendered a memorandum opinion. In conformity with such findings and conclusions, the court, on December 3, 1951, entered its judgment and decree, by which it was adjudicated that defendant was not entitled to any relief under its counterclaim and that plaintiffs were not entitled to ejectment as sought in their complaint. The judgment provided, however, that unless the defendant "shall within thirty days from the entry of this decree agree with the plaintiffs upon the compensation to be paid, and shall pay it, for an easement or right-of-way in, over, and across the property of plaintiffs in which the twenty-two inch steel pipe line of defendant is installed and for which the defendant has not secured an easement or right-of-way from plaintiffs under the instrument dated July 27, 1949, or shall, within said thirty days begin a proceeding in Eminent Domain for the acquisition of an easement or right-of-way for such pipe line as installed, and upon final judgment shall pay the amount of such compensation fixed without delay, then the plaintiffs herein may apply to this court for a mandatory injunction against the defendant's continuing to maintain and operate such gas pipe line." From this judgment the appeal comes to this court.

Defendant, Michigan-Wisconsin Pipe Line Company, a Delaware corporation, is a natural gas company as defined in Section 2 of the Natural Gas Act of June 21, 1938, 52 Stat. 821, 15 U.S.C. § 717(a) (6). The Federal Power Commission, November 30, 1946, issued to it a certificate of public convenience and necessity under Section 7(c) of said Natural Gas Act, 15 U.S.C.A. § 717 f(c) and pursuant thereto the defendant constructed, at a cost exceeding $52,000,000, a gas pipe line for the transmission of natural gas from a point in Hansford County, Texas, through the states of Texas, Oklahoma, Kansas, Ne-

braska, Missouri, Iowa, Illinois, Indiana, and to a point near Big Rapids, Michigan, and a branch from Sandwich, Illinois into Wisconsin, for the transportation and sale of natural gas in interstate commerce and resale for ultimate public consumption for domestic, commercial, industrial and other uses.

In the spring of 1949, defendant negotiated with Mr. Oehm, one of the plaintiffs (plaintiffs are husband and wife), for the purchase of a right-of-way across farm land owned by plaintiffs for a twenty-two inch pipe line as a part of said natural gas transmission pipe line system and, failing to agree, the defendant, on July 9, 1949, filed its complaint in an Indiana State Court for the condemnation of a right-of-way easement across plaintiffs' land. The right-of-way sought consisted of a strip of land seventy-five feet in width, which was meticulously described. (We see no occasion to set forth this lengthy description.)

On July 25, 1949, Mr. Oehm in writing agreed to enter into an agreement with defendant for a consideration of $8,000, allowing the defendant "to construct a pipe line across his property in accordance with description in complaint." (Obviously, this refers to the complaint in the condemnation suit.) On July 27, 1949, an instrument was signed by plaintiffs, in which receipt of the sum of $7,662.00 was acknowledged, in full payment and satisfaction of all damages incident to or in connection with the construction of the pipe line to be laid over certain land of the plaintiffs, the description being that contained in a second instrument executed concurrently with the first and designated as a right-of-way contract. This second agreement was signed by plaintiffs and, for the defendant, by Walter Gillice. By this second agreement plaintiffs acknowledged payment by the defendant in the sum of $338.00, as the consideration for the grant and conveyance by the plaintiffs to the defendant of the right to construct, maintain and operate a gas pipe line across and upon certain described land. The description therein set forth is the same as that contained in defendant's condemnation suit filed in the State Court of Indiana, as well as that in

the two instruments executed by plaintiffs, heretofore referred to. Thus, as shown by these two instruments executed on July 27, 1949, plaintiffs were paid by the defendant the sum of $7,662.00 for damages and $338.00 for the right-of-way, or a total of $8,000.00, the consideration named in plaintiffs' agreement of July 25, 1949.

A further statement of the controverted issues will show the reason for the somewhat detailed narration of the occurrences of July 27, 1949, and prior thereto. On the face of these instruments, it is obvious that defendant acquired an easement on a strip of land meticulously and certainly described therein, which was the same land sought to be condemned by its suit in the State Court. Defendant, however, did not install its pipe line on the strip of land thus acquired but upon a right-of-way, different in part, which it claims to have acquired by a contract dated August 31, 1949. (About one-third of defendant's pipe line was installed on the right-of-way acquired by the contract of July 27, 1949, and about two-thirds on a different right-of-way.) This asserted agreement will be subsequently discussed and is mentioned here only for the purpose of showing that the instant controversy arises from the fact that the defendant in the installation of its pipe line utilized a right-of-way different and other than that which it acquired on July 27, 1949. Whether it was justified in so doing is also a matter for subsequent consideration.

█ As noted, defendant, by the instruments of July 27, 1949, acquired an easement over a definitely described strip of land. It is not discernible from the record why defendant failed to utilize the easement thus acquired but instead laid its pipe line elsewhere. No claim is made that there was a mutual mistake in the description contained in the July 27 instrument and it must be assumed, so we think, that subsequent to the time of acquiring the easement therein set forth, defendant changed its mind as to the location of its line. Defendant contends, however, that the right-of-way contract dated July 27, 1949 is not binding upon it because its name was signed to the contract, without author-

ity, by Walter Gillice. This asserted lack of authority was first raised by defendant in its counterclaim and denied by plaintiffs in their answer. No proof was offered on the issue of Gillice's authority and, in our view, none was needed because his act was plainly ratified by the defendant. As already shown, plaintiffs agreed, for a designated consideration, to convey to defendant an easement over a certain described right-of-way which defendant had sought to acquire by condemnation. In conformity with that promise to the defendant, the right-of-way contract was entered into and defendant paid to the plaintiffs the consideration agreed upon. Plaintiffs no doubt by the acceptance of such consideration were bound by the terms of the contract and we think defendant was equally bound. In other words, by payment to plaintiffs of the consideration agreed upon, defendant accepted the contract and ratified its execution by its purported agent. We agree with the conclusion of the District Court that the instrument dated July 27, 1949 is a valid, binding and subsisting contract between the parties.

A serious controversy over factual issues covers the period from August 12 to September 2, 1949. During that time, negotiations took place between the parties with reference to changing the location of the right-of-way easement which defendant had previously acquired. Defendant contends that an oral agreement to such effect was reached with the plaintiffs on August 12, 1949, which oral agreement was later embodied in a written instrument dated August 31, 1949, admittedly not signed by the plaintiffs. We shall not attempt a detailed narration of the testimony bearing upon this factual issue. We have read it and think it is quite certain that there was no meeting of the minds upon either the location of a different right-of-way or the consideration to be paid therefor. The most that can be said is that Mr. Oehm indicated a willingness to a change, but it is plainly shown that he was willing to enter into an agreement only upon the condition that it be prepared by his attorney, first signed by the defendant

and then returned to him for his consideration. Efforts in this regard failed of fruition.

■ The District Court made detailed findings relative to this phase of the case, which we cannot say are clearly erroneous. And we agree with the court's conclusion, "The negotiations and conduct of the parties on and after August 12, 1949, did not result in any valid and binding contract giving the defendant an easement over the property of plaintiff Roswell P. Oehm different than that which defendant had acquired under the contract dated July 27, 1949."

■ Defendant also seeks to justify its taking of the right-of-way in question with the contention that plaintiffs by their conduct ratified the proposed agreement of August 31, 1949, and are thereby estopped from denying the validity of defendant's asserted right. This contention is predicated upon a provision in the proposed contract that the defendant "will take all necessary steps to prevent further erosion which might be caused by the construction, maintenance, operation, repairing or removal of said line." Admittedly, defendant did some erosion repair on the right-of-way at the request of Mr. Oehm but the record is hazy as to the precise circumstances under which this was done. Defendant cites no authority in support of this contention other than 75 C.J.S., Ratification, page 609, which states, "The acceptance of the results of the act with an intent to ratify, and with full knowledge of all the material circumstances, is ratification * * *." In our view, there is nothing in the testimony which indicates an intent on the part of Mr. Oehm to ratify the contract proposed by the defendant. Defendant having made an entry upon plaintiffs' land would, so we think, be liable to repair any damage to the land, and this irrespective of any previous negotiation between the parties, including the obligation contained in its proposed contract. We think there is no merit in this contention.

We agree with the District Court that defendant was not entitled to specific performance as requested in its counterclaim.

On or about the 2nd of September 1949, the defendant entered upon plaintiffs' land and, within a few days thereafter, had completed the installation of a natural gas steel pipe line twenty-two inches in diameter. Defendant was notified by plaintiffs' attorney to cease such activities until the parties had entered into an agreement for a new easement. Defendant, however, continued and completed the installation. Since early in October 1949, gas has been continuously transmitted through such pipe to numerous distributing companies in Michigan and elsewhere, and thousands of customers are being supplied.

■ This brings us to a consideration of defendant's attack upon the form of the judgment. The court denied plaintiffs' request for ejectment, but such action is not in issue here. The court also denied defendant's counterclaim for specific performance, with which we agree for reasons already noted. The court, having determined that plaintiffs were entitled to be compensated in damages because of the defendant's unauthorized taking, was presented with the problem of the procedure to be employed in making such determination. As was suggested by the District Judge in his memorandum opinion, such damages might have been determined in the instant proceeding. There is authority for this view. City of Harrisonville v. W. S. Dickey Clay Manufacturing Co., 289 U.S. 334, 339, 53 S.Ct. 602, 77 L.Ed. 1208. Instead, however, the court entered the judgment complained of. This form of judgment has been recognized as proper by the courts of Illinois. Gulf Lines Connecting Railroad of Illinois v. Golconda Northern Railway, 290 Ill. 384, 394, 125 N.E. 357, 361. In this case, wherein the complainant sought an injunction, the court stated: "If the case is one where the public convenience is involved and the occupant is performing a public service, the equitable jurisdiction ought not to be exercised without giving a reasonable opportunity to agree upon the compensation to be paid or to have such compensation ascertained according to law." This principle was reiterated in Springer v. City of Chicago, 308 Ill. 356, 364, 139 N.E. 414. No authority

is cited expressing a contrary view. In our view, defendant's complaint as to the form of the judgment is without merit. It is only required to do that which it should have done in the beginning, that is, agree with the plaintiffs if it could as to the amount of compensation to be paid and, in the absence of such an agreement, institute a proceeding in eminent domain as it was empowered to do under the Natural Gas Act, 15 U.S.C. § 717f(h). Further, we think that reference in the judgment to a mandatory injunction does not provide plaintiffs with such a destructive weapon as defendant professes to believe. In the first place, defendant is empowered with the means to protect itself from such an injunction either by agreement with plaintiffs as to the amount of their damages or by having same fixed by condemnation. In the second place, the judgment does not provide for the issuance of a mandatory injunction in the alternative as the court might have done, but only that upon failure of compliance by defendant, plaintiffs "may apply" to the court for a mandatory injunction. It will be time enough to cross that bridge when and if such an unlikely contingency should arise.

In conclusion, we are not unmindful of defendant's fear that under the procedure adopted it will not be able to get credit in whole or in part for the money it has heretofore paid to plaintiffs. That question, however, is not before us and we refrain from expressing any opinion as to its merits.

The judgment appealed from is Affirmed.