WILLIAM M. WADDEN, Plaintiff-Appellant, v. THE VILLAGE OF WOODRIDGE, Defendant-Appellee.

Second District   No. 2—89—0157

Opinion filed January 16, 1990.

232

David G. Pribyl, of Goldstine & Broida, Ltd., of Summitt (Ronald J. Broida, of counsel), for appellant.

Kenneth R. Menzel and Gerald M. Gorski, both of Gorski & Good, of Wheaton (Thomas W. Good, of counsel), for appellee.

JUSTICE WOODWARD delivered the Opinion of the court:

Plaintiff, William Wadden (Wadden), filed a three-count complaint against the defendant, Village of Woodridge (Woodridge). Pursuant to a motion by Woodridge, count II of the complaint was dismissed. Thereupon, Woodridge filed a motion for summary judgment as to counts I and III of the complaint. Wadden filed an answer to the motion for summary judgment, to which defendant then filed a reply. Wadden then filed a motion to strike Woodridge's reply. The motion to strike was denied, and the trial court granted Woodridge's motion for summary judgment. Wadden appeals, raising the following issues: whether the trial court erred in granting the motion for summary judgment; and whether the trial court erred for failing to grant Wadden's motion to strike Woodridge's reply to Wadden's answer to the motion for summary judgment.

The pertinent facts as revealed by the pleadings are largely undisputed and are as follows.

In February 1985, Wadden was advised by Leonard Berg, the director of golf course services for the Village of Woodridge, that Woodridge was hiring him for the position of golf professional. In addition to the annual base salary of $33,000 that the position paid, Berg orally agreed to pay Wadden 5% of the annual net profits of Woodridge's golf pro shop. Wadden was also given a copy of its employee manual. Later, Wadden received a revised copy of the employee manual which provided, *inter alia*, that any employee who completes six months of probationary service automatically becomes a permanent employee and, as such, is entitled to a due-process hearing prior to being demoted or terminated for cause. The employee manual also provided that an em-

ployee may be laid off when there is a shortage of work or funds or when a position is abolished.

On March 3, 1987, Joseph G. Fennell, the acting administrator for the Village of Woodridge, notified Wadden by letter that the position of full-time golf professional was being abolished and that he would be laid off effective May 1, 1987.

Subsequently, Wadden learned that on March 19, 1987, Woodridge had advertised in the local paper seeking to fill the position of support-service supervisor. Through his attorney, Wadden sent his application for the position of support-services supervisor to Woodridge. The letter also stated that Wadden believed that the general responsibilities and required knowledge and skills of his position of golf professional were identical to the position of support-service supervisor. Further, Wadden advised in the letter that if he was not appointed to the support-services supervisor position, he would deem the elimination of his position as an improper discharge without cause, in violation of Woodridge's employment and grievance procedures.

After receiving Wadden's letter and application, Woodridge stopped advertising for the position of support-services supervisor and did not fill the position. The position of golf professional (seasonal, part time) was filled by Scott Pless, Woodridge's former assistant golf professional, a position eliminated at the same time as Wadden's.

On April 30, 1987, Woodridge advertised seeking to fill the position of administrative assistant to the director of golf course services. Wadden did not submit another application for this position. In July 1987, Woodridge filled this position with someone other than Wadden.

On August 21, 1987, Wadden filed a three-count complaint against Woodridge. Count I alleged that because the position of administrative assistant was the same in substance as that of golf professional, Woodridge had breached the contractual provisions of its employee manual by discharging Wadden without a due process hearing before the village administrator. Count II alleged that Woodridge had not acted in good faith in dealing with Wadden. Count III alleged that Woodridge had breached the oral agreement to pay Wadden his bonus of 5% of the net profit of the golf pro shop. Count II was later dismissed and is not part of the appeal before this court.

On or about April 8, 1988, Wadden served interrogatories on Woodridge, seeking, *inter alia*, appropriation ordinances covering the years 1985 to current date which had been passed and approved. On or about June 3, 1988, Woodridge served its answer to interrogatories on Wadden. On or about October 26, 1988, Woodridge filed its motion for summary judgment. In response to Wadden's answer to the motion for

summary judgment, Woodridge filed a reply memorandum and affidavit which contained budget summaries and two Woodridge ordinances as exhibits. Wadden filed a motion to strike Woodridge's reply to the answer to the motion for summary judgment.

On December 27, 1988, a hearing was held on Wadden's motion to strike. Wadden argued that Woodridge committed a substantial breach of discovery rules by failing to supply the ordinances requested by Wadden's interrogatories. In response, Woodridge admitted that the budget summaries, which were exhibits to the appropriation ordinances, were not furnished to Wadden and should have been furnished. The other ordinances were transfer ordinances which were not requested by Wadden. Counsel for Woodridge denied that failure to supply the documents was willful or intentional. Counsel for Woodridge suggested that in addition to supplying Wadden with the missing documents, he would not object to Wadden being given time to respond, or Woodridge would withdraw that portion of its motion for summary judgment with respect to count III that argued there was no appropriation for a percentage of the profits. Counsel for Wadden responded that Wadden was not seeking sanctions under Supreme Court Rule 201(k) (107 Ill. 2d R. 201(k)) but rather under section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611). The trial court denied the motion to strike and refused to impose sanctions on Woodridge. Wadden elected to proceed with the hearing on the agreed basis that Woodridge would withdraw its nonappropriation argument with respect to count III of the complaint.

On January 19, 1989, the trial court granted Woodridge's summary judgment as to counts I and III, the remaining counts of the complaint. Wadden now brings this appeal.

Wadden contends, first, that the trial court erred in granting summary judgment as to count I of his complaint. Specifically, Wadden argues that since the "new" position of administrative assistant to the director of golf course services was the same as that of golf professional, there exists a genuine issue of material fact as to whether Woodridge actually abolished Wadden's position. If, in fact, the position was not abolished, then under the provisions of the employee manual, Wadden is entitled to a hearing before the village administrator before he can be discharged.

In order to resolve this issue, we must examine the qualifications necessary for each of these jobs. The qualifications for golf professional (the position held by Wadden), included graduation from high school or equivalent, two years of college preferred, and five years' experience as a golf professional or assistant golf professional, and

currently holding a class A membership or junior membership in the PGA of America. The golf professional was required, *inter alia*, to have extensive knowledge of the rules of golf, to recognize necessary maintenance of the facilities, to know the types of construction of golf equipment in order to provide information to customers, and to have knowledge of golfing events to promote public interest. The job included: supervising the golf course employees, operating and maintaining the golf pro shop and locker room facilities, conducting golf lessons outside of the 40-hour work week, attendance at monthly management and supervisory staff meetings, and providing assistance for a variety of services for the golfing public.

The position of administrative assistant to the director of golf course services requires the following qualifications: 60 hours of college or junior college accredited education and three years' experience at the supervisory level in the recreational industry. The required skills or knowledge for the position was virtually the same as for the golf professional except that the latter was to be knowledgeable about golfing events. The duties of the administrative assistant included directing the activities of part-time seasonal employees, participation in the running of the golf pro shop, coordination of the maintenance of the locker room facilities, coordinating housekeeping functions for the clubhouse, and making recommendations for capital improvements.

■■ It is not disputed in this case that the employee manual created an enforceable contract right whereby Wadden could not be discharged for cause from his position as golf professional without a hearing. (See *Duldulao v. St. Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482.) However, the employee manual does permit the layoff of employees without a hearing when the employee's position has been abolished. The courts have recognized that a layoff due to the elimination of a position is distinct from a dismissal for cause and, therefore, does not trigger a right to a hearing required for dismissals for cause. See *Woolfolk v. Board of Police & Fire Commissioners* (1979), 79 Ill. App. 3d 27.

■■ Summary judgment is proper where the pleadings, depositions, and admissions on file, together with affidavits, if any, show that there is not a genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1005.) The purpose of summary judgment is to render judgment on questions of law after first determining that no genuine issue of fact exists between the parties. (*Deltak, Inc. v. Schwartz* (1983), 119 Ill. App. 3d 119, 125.) Summary judgment is a drastic measure, to be granted only where the evidence construed most strongly

against the moving party establishes clearly and strongly and without doubt the right thereto. (*Becovic v. Harris Trust & Savings Bank* (1984), 128 Ill. App. 3d 107, 113.) The reviewing court's sole function on appeal from a grant of summary judgment is to determine whether the trial court correctly ruled that no genuine issue of material fact had been raised and, if none was raised, whether the judgment correctly was entered as a matter of law. (*Coleman v. Windy City Balloon Port, Ltd.* (1987), 160 Ill. App. 3d 408, 416.) An order allowing summary judgment will be reversed on appeal if the reviewing court determines that a genuine issue of material fact exists. *Addison v. Whittenberg* (1988), 124 Ill. 2d 287, 294.

■ We are of the opinion that the evidence before the trial court clearly established that the position of golf professional was abolished rather than replaced by the position of administrative assistant as argued by Wadden. In comparing the two positions, we note some similarities but more distinctions between the two positions. The position of golf professional carried a wide range of responsibility and a high degree of autonomy. The "golf professional" had to have five years' experience and be a member of the PGA. He gave golf lessons and organized and administered golf tournaments. He operated the golf pro shop and locker room facilities and supervised the employees for those facilities. He also prepared the budget for the operations under his control.

On the other hand, the administrative assistant is charged with carrying out the decisions and policies of the director of golf course services. He has none of the independent authority to operate the golf pro shop and locker room facilities or the supervising authority over those facilities. The administrative assistant has no responsibility or authority over golf lessons or tournaments. Although the administrative assistant must be familiar with the types and construction of golf equipment, there is no level of skill at golf or membership in the PGA required. Woodridge argues, and we agree, that there is a significant difference between a position which requires five years' experience in a professional athletic association and the requisite mastery to teach a sport and a position which merely requires sufficient knowledge to competently sell athletic equipment.

Wadden argues that merely retitling a position does not permit employees to be dismissed without cause and a new employee to be hired for the retitled position, citing *People ex rel. Byrnes v. Stanard* (1956), 9 Ill. 2d 372, and *People ex rel. Fleming v. Geary* (1944), 322 Ill. App. 338. In both those cases, the positions eliminated were identical to the positions created. However, as we concluded above, there is no ques-

tion that the former position of golf professional and the present position of administrative assistant to the director of golf course services are different both in qualifications and duties to be performed.

Wadden also argues that the position of support-services supervisor was substantially similar to that of golf professional. We note that in rendering his decision, the trial judge remarked that his decision would have been different if the question of similarity involved the positions of golf professional and support-service supervisor. Nevertheless, even given the similarities between the positions of golf professional and support-service supervisor, because Woodridge never filled the position of support-services supervisor, no cause of action against Woodridge existed. (See *Woolfolk v. Board of Fire & Police Commissioners* (1979), 79 Ill. App. 3d 27 (no cause of action against village for improper dismissal where the village abolished the police force, until there was evidence that village had hired other police officers without affording the former police officers priority rights established by ordinance).) Therefore, this argument is without merit.

Wadden also relies on a provision of the employee manual which provides in pertinent part as follows:

> "An employee who resigns or is laid-off from Village employment in good standing and who subsequently applies for re-employment may be considered in filling positions in the Village service for which he/she is qualified."

Contrary to Wadden's argument, this provision does not create any expectation, priority, or preference for former employees in the filling of village jobs. Regardless of Wadden's qualifications for the job of administrative assistant, the hiring of another individual other than Wadden did not violate the above provision of the employee manual.

We are of the opinion that summary judgment was properly granted as to count I of the complaint.

Wadden also contends that the trial court erred in entering summary judgment as to count III of his complaint. Wadden argues that a genuine issue of material fact exists as to whether Leonard Berg, the director of golf course services, had actual or apparent authority to contract with Wadden and whether that portion of the contract to pay Wadden's commission violated Woodridge's salary administration plan.

An agent's authority may be actual or apparent, actual being either express or implied. (*Schoenberger v. Chicago Transit Authority* (1980), 84 Ill. App. 3d 1132, 1136.) Circumstantial evidence may be used to establish the existence and extent of an agent's authority. (*Hofner v. Glenn Ingram & Co.* (1985), 140 Ill. App. 3d 874, 880.) Unless the parties' relationship is so clear as to be undisputed, the existence

and scope of an agency relationship are questions of fact. *Mateyka v. Schroeder* (1987), 152 Ill. App. 3d 854, 862.

Woodridge denies that Berg had the authority to enter into a contract with Wadden. The description of Berg's duties as director of golf course services included the following statements:

"In accordance with applicable administrative policies, [he] interviews, employs, evaluates and promotes departmental employees; recommends hiring and procedures for disciplinary action; develops and implements training programs for permanent and seasonal employees.

\*\*\*

Reviews and directs the operation of the maintenance division of the golf course and facilities through subordinate supervisors; reviews and approves expenditures and contracts relating to the Village Greens of Woodridge."

■ Berg's duties as director of golf course services did not include setting the compensation level for Wadden's position as golf professional. Wadden stresses that Berg told him he was hired and negotiated his salary. However, to establish the actual authority of an agent, the authority must be founded upon some word or act of the principal, not on the acts or words of the agent. (*Schoenberger*, 84 Ill. App. 3d at 1136.) Therefore, we determine that no genuine issue of material fact exists as to Berg's actual authority.

■ Wadden further argues that a genuine issue of material fact exists as to whether Berg had apparent authority. In *Schoenberger v. Chicago Transit Authority* (1980), 84 Ill. App. 3d 1132, the court, quoting from *Wing v. Lederer* (1966), 77 Ill. App. 2d 413, defined apparent authority as follows:

" 'Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds his agent out as possessing—it is such authority as a reasonably prudent man, exercising diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess.' " 84 Ill. App. 3d at 1137.

Wadden points to the following facts as tending to prove that Woodridge held Berg out as possessing the ability to contract with Wadden: Berg was a department head; he negotiated with Wadden and made a formal offer of employment; no other officer, employee, or official of the village made an offer of employment to Wadden or discussed salary with him; Woodridge advertised a negotiable "incentive package"; and Berg informed Wadden that the prior golf professional had been paid a similar percentage of the receipts from the golf pro shop.

The trial court found the case of *Bank of Pawnee v. Joslin* (1988), 166 Ill. App. 3d 927, to be dispositive of Wadden's argument. In that case, the village manager and clerk of the village were authorized to negotiate the purchase of a parcel of real estate. Since the owner of the parcel refused to sell to the village, the manager and clerk arranged for Joslin to purchase the building which would then be conveyed to the village. According to Joslin, the village manager and clerk agreed that his expenses in the purchase would be reimbursed, and the clerk, who was an officer of the bank, represented to Joslin that the bank would not look to Joslin for repayment of the note signed by Joslin, individually, to finance the purchase of the property. The village did not acquire the property from Joslin, who was then sued by the bank for nonpayment of the note. Joslin filed a third-party complaint against the village. Joslin claimed that the village was estopped from denying the enforceability of the contract to purchase the property. The village defended, *inter alia*, on the basis that neither the village manager nor clerk had actual or apparent authority to appoint Joslin as the village's agent for purchasing the property. The trial court granted the village's motion for summary judgment and Joslin appealed.

The reviewing court upheld the granting of the village's motion for summary judgment. While noting that the doctrine of estoppel has been held applicable to municipalities (*Gregory v. City of Wheaton* (1961), 23 Ill. 2d 402), the court pointed out that, normally, a city or village cannot be estopped by an act of its agent beyond the authority expressly conferred upon that official, or made in derogation of statute. (*Ganley v. City of Chicago* (1980), 81 Ill. App. 3d 877.) Nothing in the record indicated that the village clerk or the village manager was ever granted authority to enter into an undisclosed agency agreement with a third party, or to bind the village to a contract to repurchase real property from that third party. (*Bank of Pawnee*, 166 Ill. App. 3d at 929.) The court concluded that the village was not estopped to deny the unenforceability of the alleged contracts, stating as follows:

> "Undoubtedly Joslin acted improvidently in this scenario. Yet one who deals with a governmental body is at risk of having accurately ascertained that those who purport to act for that body stay within the bounds of their authority. [Citation.] A person dealing with a municipal corporation 'is charged with the knowledge of the limitations of the power of that corporation for any contract attempted to be entered into by any of its officials.' [Citation.] Where an employee of a municipal corporation purports to bind the municipality by contract, without approval or author-

ity, such a contract is 'utterly void,' and cannot be validated by principles of estoppel." *Bank of Pawnee*, 166 Ill. App. 3d at 940-41.

■■ We agree with Woodridge that the employee manual and Berg's job description, both of which are relied on by Wadden, in fact, establish Berg's lack of authority to enter into a commission contract on Woodridge's behalf. Under Woodridge's code of ordinances, the relevant portions of which are incorporated into the employee manual, Berg did not have authority to contract with Wadden for the payment of commission.

Wadden's reliance on *Aiardo v. Village of Libertyville* (1989), 184 Ill. App. 3d 653, is misplaced. Even assuming, *arguendo*, that Berg had the authority to actually hire employees, he would not have had the authority to contract for compensation which was prohibited by the village's ordinances. (*Cf. Hogan v. City of Centralia* (1979), 71 Ill. App. 3d 1004 (City manager with clear authority to hire could not hire employee at salary higher than budget appropriation for the position).) Section 2—209(d) of the village's ordinances provides in pertinent part as follows:

"Rewards. No reward in addition to regular compensation shall be received from any source by individual employees for the performance of their duties. This provision shall not be deemed to apply to the employee awards program and/or the employees suggestion program."

Wadden argues that the prohibition contained in section 2—209(d) applies only to outside rewards, such as gifts or bribes. However, the ordinance specifically sets forth the two exceptions to the "no reward" provision. Moreover, the term "negotiable incentive package" was not defined in the advertisement for the position of golf professional as being a percentage of the pro shop receipts, which could very well have fallen under one of the exceptions to the "no rewards" provision.

Finally, Wadden argues that since Woodridge advertised that the golf professional's position included a "negotiable incentive package," Wadden could reasonably assume that Berg had the authority to bind Woodridge to a contract for commission with Wadden.

However, nothing in the ad indicates that Berg had any authority to bind Woodridge to a contract of any kind. The ad merely states that resumes should be sent to Woodridge's personnel manager. Again, the issue is not whether pursuant to its ordinance Woodridge was authorized to pay commissions, but whether Leonard Berg was authorized to bind Woodridge to such a contract.

The pleadings clearly show that Berg had no actual or apparent

authority to bind Woodridge to the payment of commissions to Wadden. There being no genuine issue of material fact as to this issue, summary judgment was properly granted.

Finally, Wadden contends that the trial court erred in refusing to strike Woodridge's reply to his answer to the motion for summary judgment.

■■ Supreme Court Rule 219(c) (107 Ill. 2d R. 219(c)) provides a trial court with wide discretion as to the appropriate sanctions to impose upon a finding of failure to comply with discovery requests. A court's ruling on what sanction, if any at all, is appropriate will not be disturbed absent an abuse of discretion. *Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 363.

■■ Contrary to Wadden's assertion that Woodridge's failure to supply copies of all of the requested appropriation ordinances was willful and intentional, the record supports the trial court's finding that Wadden had not requested "transfer" ordinances, and, therefore, Woodridge's failure to supply "transfer" ordinances was not a violation of the discovery request. As for Woodridge's failure to supply the budget summaries which were a part of the requested appropriation ordinances, Woodridge acknowledged the oversight and offered equitable solutions to the remedy of the oversight. Given the confusion over the terms "appropriation" and "transfer" as applied to the ordinances, we cannot say that the "transfer" ordinances were willfully withheld, since they were never asked for. As to the budget summaries, nothing in the record indicates they were willfully or intentionally withheld. Thus, the trial court's adoption of the remedies suggested by Woodridge to cure the discovery deficiency was the appropriate response under the circumstances.

■■ ■ Wadden also points out that section 2—611 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—611) allows the court to assess reasonable attorney fees against any party filing untrue pleadings. However, where sanctions are to be imposed for discovery abuses, the sanctions are more properly imposed pursuant to the Code's provisions dealing with discovery rather than section 2—611. *Diamond Mortgage Corp. v. Armstrong* (1988), 176 Ill. App. 3d 64, 72.

For all of the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

DUNN and McLAREN, JJ., concur.