JAMES D. ATHANAS *et al.*, Plaintiffs-Appellants and Cross-Appellees, v. THE CITY OF LAKE FOREST *et al.*, Defendants-Appellees and Cross-Appellants.

Second District  No. 2—94—0664

Opinion filed July 11, 1995.—Rehearing denied August 14, 1995.

Charles A. Cohn and Erwin Cohn, both of Cohn & Cohn, of Chicago, for appellants.

John J. Cassidy, Jr., Maureen Anichini Lemon, John P. Jacoby, and James A. Morsch, all of Vedder, Price, Kaufman & Kammholz, of Chicago, and Murray R. Conzelman, of Lake Forest, for appellees.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiffs, 12 current and former police officers employed by the City of Lake Forest in the Lake Forest police department (Department) appeal from a judgment entered by the circuit court of Lake County which found that plaintiffs waived their rights to compensation for their attendance at unpaid roll calls. Defendant, the City of Lake Forest (City), cross-appeals from a circuit court finding that City officials did not have authority to enter into a contract term for unpaid police roll calls because such a contract term would conflict with the City's personnel policy on such matters.

Plaintiffs' complaint named both the City and the Department as defendants. The Department made a special appearance and argued that it was not a legal entity and could not be sued as a legal entity under the title "Lake Forest police department." Subsequently the parties referred to a single defendant, the City. We will also refer to the City as the single defendant in this appeal.

The parties made comprehensive stipulations as to numerous facts and documents. The facts of this case are therefore largely undisputed.

Plaintiffs filed this action for declaratory judgment and accounting on July 23, 1992. Plaintiffs sought a declaratory judgment that they were entitled to compensation for the 15-minute daily roll call period they were required to attend but were not compensated for during the 10 years preceding their complaint. Plaintiffs also sought an accounting for the sums allegedly owed for these unpaid roll calls.

Since at least the early 1970s, the City has maintained personnel policies which the Lake Forest city council (City Council) formally adopted in a set of provisions called "Personnel Policies and Practices" (Personnel Policies). Section 3—1 of the Personnel Policies provides that the regularly established work week for City employees, including police officers, is 40 hours per week. Section 3.5 of the Personnel Policies, which has been in existence in substantially the same form since at least 1974, governs the payment of overtime pay to the City's employees, including its police officers. Section 3.5 provides, in relevant part:

"3.5 *Compensation for Overtime Work.*

Employees shall be compensated for overtime work at the following rates:

a. Police Department—Police personnel shall be compensated at $1^1/_2$ times their established hourly rate, computed on a per hour basis for all authorized police or fire work in excess of eight hours per work day and beyond the regularly established work week, and for all authorized police or fire work when called back after normal working hours on regularly scheduled days off, including holidays. Whenever a policeman is called back to work on a temporary basis, he shall receive a minimum of two hours overtime compensation (Amended 5/1/81)."

The working hours of the City's police are divided into three daily shifts of 8 hours and 15 minutes each. The first 15 minutes of each of these shifts overlaps with the last 15 minutes of the prior shift and consists of roll call. The purpose of roll call is to brief police officers as to occurrences during prior shifts and prepare them for their street assignments. Attendance at roll calls is mandatory and is considered "authorized police work" under section 3.5 of the Personnel Policies. The City does not compensate its police officers for their attendance at roll calls. The Department has used this roll call policy for at least 28 years.

Since 1975, the Department's training of each newly hired police officer has included a field training program. Among the topics covered in the field training program is the completion of a daily duty log. In the daily duty log, each officer chronologically lists the services he or she has been engaged in during his or her shift by the type of activity. The activity is signified by a numerical code. The code for unpaid time is "998."

In 1975, when the Department became computerized and the current daily duty log was adopted, the then chief of police initiated the practice of recording unpaid time as "998" on the duty log. During each officer's field training, field training officers orally instruct train-

ees to report the time spent at roll call in their daily duty logs as unpaid time by entering "998" on the log.

Each plaintiff, whether hired before or after 1975, acknowledged that he or she was made aware of the roll call policy at the inception of his or her employment as a police officer for the City. Each plaintiff knew that he or she was required to attend roll call as a condition of employment but would not be paid for attending roll call. Each plaintiff was aware of the provisions of section 3.5 of the Personnel Policies as to overtime. The plaintiffs understood that one of the purposes of recording roll call time as "998" on the daily logs was to provide information to the police chief which the chief could use in seeking higher wages for police officers.

After being informed of the roll call policy, each plaintiff continued to work for the City as a police officer. Throughout this employment, the City never paid any plaintiff for his roll call time. Prior to this action, no plaintiff ever formally complained of the roll call policy.

The roll call policy did not originate from and is not mandated by any enactment, resolution, policy, or ordinance of the City Council. The roll call policy was never reduced to writing. Since at least 1964, Lake Forest city managers orally approved of the roll call policy.

Plaintiffs filed a four-count complaint. The trial court granted summary judgment in favor of defendant as to count II. Plaintiffs abandoned count III. Counts II and III are not at issue in this appeal.

A trial was held on counts I and IV of plaintiffs' complaint. Count I sought a declaratory judgment that the Personnel Policies entitled plaintiffs to compensation in the form of overtime for their unpaid attendance at roll calls each work day in the 10 years preceding their complaint. Count IV sought an accounting if plaintiffs prevailed on count I.

The trial court entered judgment in favor of defendant. The trial court's judgment was based on its findings that: (1) the employment contracts between plaintiffs and defendant included section 3.5 of the Personnel Policies; (2) the Lake Forest city managers and other officials did not have authority to enter into a contract term in derogation of or conflict with section 3.5; (3) the affirmative defense of estoppel did not apply in this case; and (4) plaintiffs waived their rights under section 3.5 to compensation for their roll call attendance.

Plaintiffs filed a timely appeal. On appeal plaintiffs contend that the trial court erred in finding that they waived their rights.

Defendant filed a timely cross-appeal. On appeal, defendant contends that the trial court erred in finding that city officials did not have authority to contract with police in derogation of section 3.5.

■ The standard of review of a declaratory judgment is as follows: " '[T]he grant or denial of declaratory relief is discretionary. [Citation.] The trial court's exercise of this discretion is subject to searching appellate review and is not given the same deference as is the trial court's exercise of discretion in other contexts. [Citation.] Independent review is justified because the exercise of the trial court's discretion in granting or denying declaratory relief is not dependent upon factors which are difficult for an appellate tribunal to review, such as, for example, factual determinations of credibility.' " *Gaiser v. Village of Skokie* (1995), 271 Ill. App. 3d 85, 91, quoting *Chicago & Eastern Illinois R.R. Co. v. Reserve Insurance Co.* (1981), 99 Ill. App. 3d 433, 436-37.

We will first address defendant's cross-appeal. In its cross-appeal, defendant contends that the trial court erred in finding that the city managers and other city officials did not have authority "to enter into a contract term in derogation of or in conflict with Section 3.5." Defendant asserts that the roll call policy was a valid, enforceable, and binding contract modification of section 3.5.

In support of its position, defendant first cites *Duldulao v. Saint Mary of Nazareth Hospital Center* (1987), 115 Ill. 2d 482. In *Duldulao*, our supreme court addressed the question of whether policy statements such as those in an employee handbook can create contractual rights which overcome the presumption of at-will employment. (*Duldulao*, 115 Ill. 2d at 485.) The court held that an employee handbook or other policy statement created enforceable contractual rights if the traditional requirements for contract formation, *i.e.*, offer, acceptance, and consideration, were present. *Duldulao*, 115 Ill. 2d at 490.

Relying primarily on *Hany v. General Electric Co.* (1991), 221 Ill. App. 3d 390, defendant maintains that the *Duldulao* principles apply to modifications of employee contractual rights created by policy statements as well as their formation. Defendant argues that plaintiffs' "admissions" show that the roll call policy in this case satisfied the *Duldulao* requirements and therefore modified section 3.5.

In *Hany*, General Electric (GE), an employer, established a written overtime policy for its salaried employees. (*Hany*, 221 Ill. App. 3d at 393.) Although the overtime policy provided for overtime pay to salaried employees who worked longer hours, a new plant manager held meetings with employees during which he consistently stated that salaried employees needed to work longer hours but would not receive overtime pay for their work. (221 Ill. App. 3d at 393.) Four years after the arrival of the new plant manager, a number of sala-

ried employees filed a class action suit against GE seeking compensation under the overtime policy for the longer hours they claimed to have worked. (221 Ill. App. 3d at 394.) Many of the plaintiff employees testified that they understood from the manager's meetings that they would not receive compensation for extra hours worked. 221 Ill. App. 3d at 393.

The employees in *Hany* appealed from a jury verdict in favor of GE. Applying the *Duldulao* principles, the appellate court first determined that the verdict was reasonable because the jury could have concluded that GE did not sufficiently disseminate the overtime policy to create enforceable contractual rights. (221 Ill. App. 3d at 395.) The court next determined that even if GE had sufficiently disseminated its overtime policy to create contractual rights under *Duldulao*, the policy would have remained a continuing offer to the employees which GE could unilaterally terminate or modify at any time. (221 Ill. App. 3d at 396.) The court stated that "an employer may prove that it modified the offer contained within a sufficiently disseminated policy statement by disseminating that modification to the same or greater extent than it disseminated the original policy statement." 221 Ill. App. 3d at 396-97.

In this case, it is undisputed that section 3.5 created an enforceable contractual right under *Duldulao*. However, defendant maintains that the roll call policy was a binding and enforceable modification of section 3.5 under *Hany*. Defendant argues that the facts show that the roll call policy, although oral, was sufficiently disseminated to plaintiffs and accepted by them as a condition of their employment so as to constitute a modification of section 3.5 under *Hany*.

Plaintiffs do not vigorously contest defendant's argument that the facts of this case satisfy the requirements for a modification of section 3.5 under *Hany*. Although plaintiffs state that there may be a question as to whether an oral modification of a written policy can be effective, plaintiffs nonetheless acknowledge that each plaintiff in this case was made fully aware of the roll call policy at the inception of his or her employment. We believe the undisputed facts support a finding that the purported modification of section 3.5 in the form of the roll call policy was adequately disseminated to plaintiffs to satisfy the *Hany* requirement in this regard. We also note that, after each plaintiff became aware of the roll call policy, he or she continued his or her employment as a police officer and followed the roll call policy. This satisfied the *Duldulao* and *Hany* requirements of acceptance and consideration. Thus, without more, under *Hany*, the roll call policy was a modification of section 3.5.

However, plaintiffs contend that defendant's argument is

incomplete because it ignores another requirement for the modification of a contractual right, *i.e.*, proper authority to bind a principal. (*See Wadden v. Village of Woodridge* (1990), 193 Ill. App. 3d 231, 240-41 (term in employment contract unenforceable because municipal official who agreed to the term did so without proper authority).) In plaintiffs' view, the trial court correctly found that the city officials who purported to modify the City's overtime policy set out in section 3.5 lacked authority to do so and therefore the roll call policy was not a binding and enforceable modification of section 3.5.

The parties agree that the City Council enacted section 3.5 and had authority to modify it. However, the City Council has not formally acted to modify section 3.5. Rather, chiefs of police instituted the roll call policy and city managers later approved the roll call policy which defendant contends modified section 3.5. Thus, the question before us is whether the city officials who, acting as agents for the City Council, purportedly modified section 3.5 by disseminating and implementing the roll call policy had the authority to take that action.

■ An agent's authority may be actual or apparent, and actual authority may be either express or implied. (*Wadden*, 193 Ill. App. 3d at 233.) The existence and scope of an agency relationship are questions of fact unless the relationship is so clear as to be undisputed. *Wadden*, 193 Ill. App. 3d at 238-39.

Defendant first contends that the city officials involved in this case had express actual authority to modify section 3.5. In support of its contention, defendant points to section 33—18 of article III and section 2—92(6) of article VI of the Lake Forest City Code (City Code).

Section 33—18 provides, in pertinent part, as follows:

> "The chief of the police department may make or prescribe such rules and regulations for the conduct and guidance of the members of the department as he shall deem advisable; such rules, when approved by the City Manager shall be binding on such members." Lake Forest, Ill., City Code, art. III, § 33—18 (1946).

Section 2—92(6) provides that the city manager has, *inter alia*, the powers and duties to:

> "Administer the employment and personnel policies of the city as approved by the mayor and city council; recruit, interview and employ necessary personnel for the several city departments and offices as required." Lake Forest, Ill., City Code, art. VI, § 2—92(6) (1982).

Plaintiffs respond that the City Council has reserved to itself the power to modify the Personnel Policies and has limited the authority of city managers with respect to the Personnel Policies to acts "con-

sistent" with the Personnel Policies. In support of their position, plaintiffs cite the "AUTHORITY" clause of the Personnel Policies, which states:

> "The City Manager, by City Council directive, is responsible for the administration of the following personnel rules and regulations and is vested with full authority to establish by administrative directive other terms and conditions of employment consistent with policy established by the City Council."

We agree with plaintiffs that the authority clause of the Personnel Policies limits the authority of the city manager to establish terms and conditions of employment to those that are "consistent" with the Personnel Policies. Moreover, we do not discern anything in either section 33—18 of article III or section 2—92(6) of article VI of the City Code which alters this limitation on a city manager's authority.

▮ The terms of the roll call policy are not consistent with the overtime policy enacted by the City Council in section 3.5 of the Personnel Policies. The roll call policy requires police officers to work 8 hours and 15 minutes per day, but compensates the officers for only eight hours of work. Section 3.5 provides that police officers be paid overtime for all "authorized police work" in excess of eight hours per day. The entire 8 hours and 15 minutes police officers work each day under the roll call policy is "authorized police work." Thus, these policies are plainly inconsistent. (See *Bartoszewski v. Village of Fox Lake* (1995), 269 Ill. App. 3d 978; *Aiardo v. Village of Libertyville* (1989), 184 Ill. App. 3d 653 (determining that roll call policies similar to the roll call policy here were inconsistent with overtime policies similar to the overtime policy here).) Consequently, the city officials who continued to apply the roll call policy after the enactment of section 3.5 did so without express authority for their actions.

Nor did the city officials have apparent authority to modify section 3.5. In their reply brief, plaintiffs take issue with defendant regarding a purported argument by defendant that the city officials had apparent authority to modify section 3.5 by implementing the roll call policy. However, defendant denies that it made such an argument and states that "the doctrine of apparent authority has no application whatsoever to this case." Because defendant concedes that city officials did not have apparent authority to modify section 3.5, we need not further address the question of apparent authority.

Based on the foregoing, we conclude that the trial court did not err when it found that the city officials who approved the roll call policy did so without authority. However, this does not completely resolve the question of whether the roll call policy was a binding and

enforceable modification of section 3.5. Defendant contends that, even if the city managers and chiefs of police did not have authority to modify section 3.5 by implementing the roll call policy, the modification was effective because the City Council ratified the roll call policy.

■ Where an agent has acted outside the scope of his or her authority, a principal may ratify the unauthorized act and the ratification is equivalent to original authority confirming that which was originally unauthorized. (*Advance Mortgage Corp. v. Concordia Mutual Life Association* (1985), 135 Ill. App. 3d 477, 485.) Ratification may be express or implied and occurs when the principal, with knowledge of the material facts of the unauthorized action, takes a position inconsistent with nonaffirmation of the action. (*Schoenberger v. Chicago Transit Authority* (1980), 84 Ill. App. 3d 1132, 1138-39.) The doctrine of ratification applies to municipal and other public bodies. *Bethune v. Larson* (1989), 188 Ill. App. 3d 163, 169.

Defendant first maintains that the testimony of John F. Fischbach, a former city manager for the City from 1979 to 1990, established that the City Council ratified the roll call policy. Fischbach's testimony on this matter was as follows:

"Q. By the way, during the time that you had the discussion with Chief Prais about the [roll call] policy after you became the city manager, what if any action did you take with respect to the policy?

A. I approved it. I mean I thought it was a great idea. In fact, I talked with the city council about it and explained to them what the people were doing. And in a sense I sort of bragged about it because it showed the commitment of the men and what they wanted to achieve for the city.

Q. Were there any particular members of the city council with whom you had such discussions?

A. The finance committee was the one that I usually reviewed the budget with in detail. Although the whole city council would review it and approve it, the finance committee would recommend it to the city council. I would work with the finance committee members in depth on the budget as it was prepared.

Q. Were you given any dollar quantity amounts, that is, that were—the amount of the savings that were affected because of the officers' attendance at the pre-shift roll call policy by Chief Prais?

A. The one I recall specifically in 1980 was roughly $39,000 was the figure that I recall writing in a report. It was a whole cost cutter summary of what we achieved in cutting costs. 1980 as you may recall I think was—a very high inflation period was going on and so we were trying to cut costs every chance we got. It was one

example I used of how the employees of the city were responding to the needs of the city to cut costs and 39,000 was the figure I used in a report to the city council telling them that." Defendant asserts that Fischbach's testimony showed that he had advised the City Council of the continuing application of the roll call policy both orally and by written reports since at least 1980. Defendant argues that the City Council's acquiescence in the application of the roll call policy by its failure to repudiate or rescind the roll call policy and to enforce section 3.5 constituted ratification of the roll call policy. We agree.

Fischbach's testimony establishes that the City Council was aware of the roll call policy and that it was being applied after section 3.5 was enacted. The testimony shows that Fischbach advised the City Council finance committee of the roll call policy by a written report which included a specific dollar amount that was being saved by the roll call policy in 1980. Fischbach's uncontroverted testimony was that the entire City Council reviewed his report to the finance committee.

■ A principal, including a city, can ratify the actions of its agent by not repudiating the agent's actions once it has knowledge of the actions, or by accepting the benefits of the actions. (*City of Burbank v. Illinois State Labor Relations Board* (1989), 185 Ill. App. 3d 997, 1003.) Ratification may also be inferred from surrounding circumstances, including long-term acquiescence, after notice, in the benefits of an unauthorized transaction. *Progress Printing Corp. v. Jane Byrne Political Committee* (1992), 235 Ill. App. 3d 292, 310.

■ Here, Fischbach's testimony showed that, as early as 1980, while he was city manager, he notified the City Council of the roll call policy by written reports to the City Council. His reports notified the City Council of the dollar amounts saved by not compensating police officers for their attendance at roll calls. The City Council did not act to halt the roll call policy and enforce section 3.5. Thus, the City Council ratified the roll call policy by its failure to repudiate the policy, by its acceptance of the benefits of the policy, and by its acquiescence in those benefits.

In addition, the City ratified the roll call policy by its defense of this action and its cross-appeal. A principal who institutes an action to enforce a contract made by an agent without proper authority is deemed to have ratified the contract. (*La Salle National Bank v. Brodsky* (1964), 51 Ill. App. 2d 260, 266.) It follows that a principal who defends an action and initiates a cross-appeal to enforce a modification to a *Duldulao* contract right made by agents without proper authority is deemed to have ratified the modification to the

*Duldulao* contract right. See Restatement (Second) of Agency § 97 (1958) (defense based on unauthorized transaction as though it were authorized constitutes ratification of the transaction).

In this case, as established above, the roll call policy, if it had been authorized, would have modified section 3.5. However, the city officials who implemented and approved the roll call policy did so without proper authority. By defending against plaintiffs' suit seeking a declaratory judgment that plaintiffs were entitled to compensation for their attendance at roll calls, and by continuing the defense in its cross-appeal, the City has taken the position that the roll call policy was authorized and therefore has ratified the roll call policy.

By ratifying the roll call policy, the City confirms what was originally unauthorized. Because there is no real dispute that the *Duldulao* requirements of dissemination and acceptance were satisfied, defendant's ratification of the roll call policy modifies section 3.5 so that plaintiffs were not entitled to overtime pay for their attendance at roll calls.

Based on the foregoing, we affirm the trial court judgment in favor of the City. Because the City ratified the roll call policy and plaintiffs are therefore not entitled to compensation for their attendance at roll calls, it is unnecessary for us to address the issue of whether plaintiffs waived their rights to compensation.

Affirmed.

GEIGER and THOMAS, JJ., concur.