**Joyce E. ANDERSON, individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**RIZZA CHEVROLET, INC., Defendant.**

No. 97 C 887.

United States District Court,
N.D. Illinois,
Eastern Division.

June 9, 1998.

Cathleen M. Combs, Daniel A. Edelman, James O. Latturner, Jeffrey Scott Sell, Edelman & Combs, Chicago, IL, Jamie S. Franklin, Edelman & Combs, Chicago, IL, Michelle Ann Weinberg, Law Offices of Michelle A. Weinberg, Chicago, IL, for plaintiffs.

Hall Adams, III, Martin D. Snyder, Williams & Montgomery, Chicago, IL, Richard M. Karr, Jonathan Paul Geen, Hardt & Stern, P C, Chicago, IL, Eugene Joseph Kelley, Jr., Arnstein & Lehr, Chicago, IL, Suzan J. Sutherland, Edward J. Malek, Law Offices of Edward J. Malek, Chicago, IL, Eugene Joseph Kelley, Jr., John L. Ropiequet, Christopher S. Naveja, Patti S. Levinson, Arnstein & Lehr, Chicago, IL, for defendant Rizza Chevrolet Inc.

Eugene Joseph Kelley, Jr., John L. Ropiequet, Christopher S. Naveja, Patti S. Levinson, Arnstein & Lehr, Chicago, IL, for defendant Zirgo. L.P.

## *OPINION AND ORDER*

NORGLE, District Judge.

Before the court is Defendant's Motion for Summary Judgment on Counts I and II. For the following reasons, Defendant's motion is granted.

### I. BACKGROUND [1]

In or before March 1996, Plaintiff Joyce E. Anderson ("Anderson") struck a deal with Rose Hocevar ("Hocevar"), a mortgage broker. Anderson agreed to act as a guarantor on Hocevar's car loan, if Hocevar would waive her brokerage fees when Anderson refinanced her rental property. Anderson understood Hocevar's fees to be somewhere between three and four thousand dollars.

In late March 1996, Anderson along with her husband Ronald Anderson, accompanied Hocevar to purchase an automobile from Defendant Rizza Chevrolet, Inc. ("Rizza"). Hocevar had her heart set on a used Mercedes, and Rizza happened to have just one on its premises. After a short test drive, Hocevar indicated that she wanted the car. After agreeing on a purchase price of $23,850.00, Hocevar, accompanied by the Andersons went to the finance manager's office. At some point during the conversation, Hocevar inquired about an extended service contract ("E.S.C."). Anderson testified to the events surrounding the E.S.C. as follows:

Q. [W]hat did the finance manager tell Hocevar it would cost her to purchase an [E.S.C.]?

A. $1,495.00.

Q. And when he told that to Hocevar, what did Hocevar say to him?

A. She wanted to know if it could be written into the financing.

Q. Did she say anything else about the price of the [E.S.C.] to the finance manager?

A. No. She just accepted it.

Q. Did she complain it was too high?

A. No.

Q. Did you?

A. No.

. . .

Q. Up until the time the finance manager quoted you that price for purposes of the [E.S.C.], had you seen anything in writing regarding its price?

A. No, I didn't.

Q. And when the finance manager quoted that price for the [E.S.C.], it was then your intention to cosign for Miss Hocevar, is that correct?

A. Yes.

---

**1.** The undisputed facts for this opinion are taken from the court's reconciliation of the parties' Local Rule 12(M) and 12(N) statements. *Brasic* *v. Heinemann's Inc.,* 121 F.3d 281, 284 (7th Cir.1997)(discussing Local Rule 12(M) and 12(N)).

Q. And his quoting that price for purchase of the [E.S.C.] did not change your intention to cosign for Miss Hocevar, did it?

Q. No.

(Anderson Dep. at 40–42.)

Eventually, the terms of the transaction were memorialized in a Retail Installment Contract ("RIC"). In relevant part, the RIC provided:

**Itemization of Amount Financed**

| | |
|---|---|
| Cash Price | $ 23,850.00 |
| Less Cash Down Payment | $ 5,100.00 |
| Less Trade–In | $ N/A |

**Amounts Paid on Your Account**

| | |
|---|---|
| Unpaid Balance of Cash Price | $ 18,750.00 |

**Amounts Paid to Others for You**

| | |
|---|---|
| Unpaid Balance Due on Trade–In (Paid to) | $ N/A |
| Insurance Companies | $ N/A |
| Public Officials (License, Title & Taxes) | $ 1,912.83 |
| To   E.S.C. | $ 1,495.00 |
| To   DOC FEE | $ 44.58 |

(Def.'s Br. Ex. B.)

Anderson claims that she saw the above RIC provisions, but never signed the instrument in her capacity as a guarantor because Hocevar did not have the entire down payment. Further, Rizza informed Anderson that the RIC could not be signed until Hocevar returned with the remaining balance on the down payment. Although Anderson never returned to Rizza to execute the RIC as a guarantor, Hocevar contacted her sometime in or after May 1996, indicating that she had taken possession of the Mercedes. Anderson states that she never signed the RIC and casts the aspersion of forger upon Hocevar.

Shortly thereafter, Hocevar defaulted on her loan payments. Anderson then received a phone call from Zirgo L.P. ("Zirgo"), assignee to Rizza's interest under the RIC, demanding that she cure the default as guarantor[2] of the loan. Rather than assert the defense of forgery, Anderson took out a loan from a third-party and paid off the entire amount of the RIC. At some point, Anderson advised Rizza that she did not want the E.S.C. and requested a full refund. Anderson states that Rizza agreed, but told her that the check would first have to be made payable to Zirgo, its successor-in-interest. After Rizza confirmed that a check had been sent for the full amount of the E.S.C., Anderson turned to Zirgo for her refund. Zirgo, however, was only willing to refund a small portion of the E.S.C., claiming that it needed the money to offset the costs of repossessing the Mercedes from Hocevar.

Although Anderson is currently in possession of the car, she claims that she neither uses nor wants the Mercedes. Thus, on February 10, 1997, Anderson filed a seven count complaint against Rizza and Zirgo.[3] Counts I and II, the subjects of the instant motion for summary judgment, allege violations of the Truth–in–Lending Act, 15 U.S.C. § 1601 et seq. (1998) ("TILA"), and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 et seq. (West 1992) ("ICFA"), respectively.

## II.  DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a

---

2. Defendant repeatedly characterizes Anderson as a "surety" throughout its pleadings. However, Anderson is really a "guarantor." The difference is not purely semantics. A surety is primarily liable to a creditor. *Chandler v. Maxwell Manor Nursing Home, Inc.*, 281 Ill.App.3d 309, 217 Ill.Dec. 71, 666 N.E.2d 740, 750 (1996). In contrast, a guarantor incurs secondary liability for the debt of another. *McCracken v. Olson Co.,*

*Inc.*, 149 Ill.App.3d 104, 102 Ill.Dec. 594, 500 N.E.2d 487, 492 (1986). Here, the RIC expressly states that Anderson is a guarantor and the actions of Zirgo in attempting to collect from Anderson confirm this legal status.

3. Zirgo is no longer a party to this action, having settled its dispute with Anderson.

matter of law." Fed.R.Civ.P. 56(c). "An issue of fact is genuine only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Smith v. Severn*, 129 F.3d 419, 426 (7th Cir.1997)(*quoting Newell v. Westinghouse Elec. Corp.*, 36 F.3d 576, 578 (7th Cir.1994)) (citation omitted).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When considering all the evidence presented in a motion for summary judgment, a court cannot make credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must "view the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party." *Sample v. Aldi, Inc.*, 61 F.3d 544, 546 (7th Cir.1995).

"If the non-moving party bears the burden of proof on an issue, that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact." *Id.* at 547. "[A] party will be successful in opposing summary judgment only when they present definite, competent evidence to rebut the motion." *Severn*, 129 F.3d at 427 (citations and internal quotation marks omitted). Therefore, the non-moving party will not survive summary judgment with merely a scintilla of evidence supporting its position. *Essex v. United Parcel Serv. Inc.*, 111 F.3d 1304, 1308 (7th Cir.1997). Accordingly, "[t]he question is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Severn*, 129 F.3d at 427.

Before the court can reach the merits of the instant motion, it must first put Anderson's legal relationship to Rizza and Zirgo into context. Such an endeavor requires an examination into the bizarre facts of this case. It is undisputed that Anderson did not sign the RIC; her signature was a forgery. It is also undisputed that Anderson

did not want the Mercedes. Given these facts, it appears that Anderson had an unassailable defense to avoid the purchase of an unwanted $23,000.00 automobile. Why then, did Anderson pay Zirgo the contract price of the car? Anderson claims that she did so to avoid a bad credit rating, although it is difficult to grasp how such an event would occur in light of the undisputed forgery.[4] The more appropriate question is what was the legal effect of Anderson's redemption actions. In other words, do Anderson's deeds constitute a ratification of the RIC and give her standing to challenge its provisions under TILA and ICFA?

■■■■ Under Illinois law, a forged note is voidable, unless ratified. *Fillmore v. Markham Motors Outlet*, No. 95 C 7439, 1996 WL 238733, at *2 (N.D.Ill. May 3, 1996) (*citing Krueger v. Dorr*, 22 Ill.App.2d 513, 161 N.E.2d 433, 439–40 (1959)). "[T]he whole point of ratification is to give legal effect to an otherwise voidable [contract]." *Oubre v. Entergy Operations, Inc.*, — U.S. —, —, 118 S.Ct. 838, 847, 139 L.Ed.2d 849 (1998) (Thomas, J., dissenting). Ratification occurs when "the party to be charged with ratification clearly evinces an intent to abide and be bound by the act." *Hofferkamp v. Brehm*, 273 Ill.App.3d 263, 210 Ill.Dec. 405, 652 N.E.2d 1381, 1389 (1995). The intent to be bound may be express or implied from a party's acts or deeds. *Athanas v. City of Lake Forest*, 276 Ill.App.3d 48, 212 Ill.Dec. 686, 657 N.E.2d 1031, 1037 (1995). Ultimately, ratification is a question of fact, *Immobiliaria Grupo Lanon v. JV Fin. Corp.*, No. 96 C 579, 1997 WL 11236, at *4 (N.D.Ill. Jan.8, 1997), which is determined by looking at the totality of the circumstances. *Stathis v. Geldermann, Inc.*, 258 Ill.App.3d 690, 196 Ill.Dec. 761, 630 N.E.2d 926, 933 (1994).

■■■■ Here, Anderson's acts and words provide compelling evidence of ratification. She paid the balance of the RIC and took possession of the Mercedes. Zirgo then returned a copy of the RIC to Anderson marked "Paid 8/20/96." Additionally, Anderson stated that it was her intent to be

---

4. After Hocevar defaulted on the loan, she and Anderson had a parting of the ways. Thus, Anderson never secured refinancing on her rental property through Hocevar.

bound by the contract. Rizza does not contest Anderson's claims. Thus, the court finds that Anderson's subsequent actions and words, despite knowledge of the forgery, worked a ratification of the RIC. *Oehm v. Michigan–Wisconsin Pipe Line Co.,* 199 F.2d 253, 255 (7th Cir.1952) (acceptance of contract consideration ratifies execution); *Grot v. First Bank of Schaumburg,* 292 Ill. App.3d 88, 226 Ill.Dec. 20, 684 N.E.2d 1016, 1020 (1995) (finding that plaintiff's acceptance of trust property subject to indebtedness operated as a ratification of contract originally entered into under forged direction letter). It must be noted, however, that the RIC Anderson ratified and the RIC she saw at Rizza in March were two different documents. The March RIC named the First National Bank as assignee; whereas, the ratified RIC named Zirgo as successor-in-interest. In any event, the court finds that Anderson, as guarantor, has standing to raise her TILA and ICFA claims. *Barash v. Gale Employees Credit Union,* 659 F.2d 765, 768 (7th Cir.1981) (holding that guarantor of loan had standing to sue under TILA despite statutory language requiring creditor disclosures only to primary obligor); *Norton v. City of Chicago,* 267 Ill.App.3d 507, 204 Ill. Dec. 938, 642 N.E.2d 839, 841 (1994) (noting that individuals who contract for the purchase of merchandise may avail themselves of the ICFA).

## I. *TILA Claims*

Anderson contends that she is entitled to actual damages under 15 U.S.C. § 1640(a)(1), and its enabling counter part 12 C.F.R. § 226 (1997) ("Regulation Z"). Specifically, Anderson argues that Rizza violated Regulation Z when it retained a portion of the E.S.C. as its own profit, rather than passing the entire $1,495.00 along to the warranty provider. Because the E.S.C. itemization line falls under the heading of "Amounts Paid to Others for You," Anderson claims that consumers are misled into believing that the E.S.C. provider receives the full amount charged by Rizza.

The Seventh Circuit addressed this very issue in *Gibson v. Bob Watson Chevrolet–*

*Geo, Inc.,* 112 F.3d 283 (7th Cir.1997), and held that the dealership's failure to disclose the withheld warranty amount violated Regulation Z. *Id.* at 286. Chief Judge Posner noted, however, that although the dealership was obligated to disclose the fact that it retains a portion of the E.S.C., he did not read the Federal Reserve Board Commentary so expansively as to require dealerships to itemize the exact amount pocketed. *Id.*[5]

Rizza does not address Anderson's factual or legal assertions regarding its E.S.C. billing practices. Instead, Rizza argues that even if a per se violation of TILA occurred, Anderson is not entitled to actual damages because she cannot demonstrate a causal connection between her pecuniary harm and the improper itemization of the E.S.C. charges. In other words, Rizza claims that Anderson was not deceived nor did she rely on the RIC when she paid the $1,495.00 for the E.S.C.

Rizza correctly notes that TILA requires a plaintiff to show proximate cause when seeking actual damages. *Cirone–Shadow v. Union Nissan of Waukegan,* 955 F.Supp. 938, 943 (N.D.Ill.1997); *Lindsey v. Ed Johnson Oldsmobile, Inc.,* No. 95 C 7306, 1997 WL 269627, at * 4 (N.D.Ill. May 14, 1997). The causation element is satisfied when a plaintiff demonstrates that but for the misrepresentation, better credit terms would have been secured. *Groth v. Rohr-Ville Motors, Inc.,* No. 95 C 5429, 1997 WL 630189, at *4(N.D.Ill. Sept.30, 1997); *Bambilla v. Evanston Nissan, Inc.,* No. 94 C 6818, 94 C 2748, 1996 WL 284954, at *4 (N.D.Ill. May 21, 1996). Thus, to recover actual damages under TILA, a plaintiff must show that "(1) she read the TILA disclosure statement; (2) she understood the charges being disclosed; (3) had the disclosure statement been accurate, she would have sought a different warranty or a lower price; and (4) she would have obtained another warranty or a lesser price." *Groth,* 1997 WL 630189, at * 4 (*citing Romaker v. Crossland Mortgage Corp.,* No. 94 C 3328, 1996 WL 254299, at *2 (N.D.Ill. May 10, 1996)).

---

**5.** The Federal Reserve Board serves as the oracle     of TILA. 15 U.S.C. § 1604(a).

In *Groth*, the defendant's RIC contained the same E.S.C. disclosure representations as in this case. *Groth*, 1997 WL 630189, at * 1. There, the plaintiff admitted that she signed the RIC, but did not realize it contained a provision obligating her to a $1,000.00 E.S.C. *Id.* The court found this admission dispositive when it reasoned that "[w]ithout evidence that [defendant's] false statement impacted [plaintiff's] decision of how much to pay, a reasonable person cannot conclude that she could have paid a lower price for the warranty but for the misstatement." *Id.* Thus, the court concluded that, among other failings, the plaintiff could not demonstrate proximate cause. *Id.*

■ Here, there is no credible evidence that Rizza's alleged misstatements affected Anderson's decision of how much to pay for the E.S.C. On the contrary, Anderson's deposition testimony clearly reveals that she intended to pay the full amount, well before seeing the RIC.

Q. Up until the time the finance manager quoted you that price for purposes of the [E.S.C.], had you seen anything in writing regarding its price?

A. No, I didn't.

Q. And when the finance manager quoted that price for the [E.S.C.], it was then your intention to cosign for Miss Hocevar, is that correct?

A. Yes.

Q. And his quoting that price for purchase of the [E.S.C.] did not change your intention to cosign for Miss Hocevar, did it?

A. No.

(Anderson Dep. at 40–42.)

The above passage unequivocally shows that Anderson agreed to the quoted E.S.C. price before the term was memorialized, reviewed, and ultimately ratified. As such,

Anderson cannot claim that the RIC caused her harm; she made the decision to cosign before reviewing the allegedly deceptive provisions. Further, Anderson's deposition testimony reveals that she never actually saw the RIC under which she was ultimately bound until it was ratified.[6] Although Anderson did see identical E.S.C. provisions in the March RIC, the ratified RIC was a different document by virtue of Zirgo being unilaterally named assignee.[7] Thus, it would indeed be an anomalous result if the court were to hold that Anderson's pecuniary loss flowed from a contract which she never reviewed before ratifying.

■ Anderson attempts to create a genuine issue of material fact regarding proximate cause by attaching a self-serving affidavit in her response brief, which states in relevant part: "If I had known that Rizza kept a large part of [the E.S.C.], I would have attempted to negotiate the price of the extended warranty, or I would not have purchased the extended warranty." (Resp.Br.Ex. A.) Not only does this "carefully crafted" statement come at the eleventh hour, but it belies Anderson's deposition testimony. Thus, the court rejects Anderson's affidavit. *Diliberti v. United States*, 817 F.2d 1259, 1263 (7th Cir.1987) ("[I]t is well established that a party cannot create a genuine issue of material fact by submitting an affidavit containing conclusory allegations which contradict plain admissions in prior deposition or otherwise sworn testimony.")

The court notes that its decision to deny Anderson actual damages does not frustrate the policy underlying TILA, even in the face of Rizza's seemingly suspect RIC forms. As the Seventh Circuit stated in *Gibson*, TILA "is not a general prohibition of fraud in consumer transactions or even in credit transactions. Its limited office is to protect consumers from being misled about the cost of

---

6. Anderson admits in her deposition that she first learned of Zirgo's status as successor-in-interest of the RIC when a representative contacted her to insist that she fulfill her obligations as guarantor. Further, Anderson stated that she did not advise Zirgo of the forgery until "after Zirgo had been paid" and she got the RIC back from Zirgo marked "paid-in-full." (Anderson Dep. at 12, 75.)

7. Because Anderson never claims that she reviewed the ratified RIC before paying Zirgo the full amount for the Mercedes, for all she knew, other terms could have been unilaterally changed as well.

credit." 112 F.3d at 285. Chief Judge Posner's pronouncements and the requirement of proximate cause indicate that TILA imputes some degree of diligence to the consumer. Here, Anderson's own acts and omissions, e.g., intending to pay the E.S.C. price before reviewing the RIC terms, failing to assert a forgery defense, and later ratifying the RIC without seeing a copy of it, appear to have more proximately caused her damages than Rizza's alleged misrepresentations. Therefore, the court concludes that Anderson cannot recover actual damages under TILA.

Next, Anderson claims that she is entitled to recover statutory damages under TILA. Although § 1640 contains numerous statutory penalties, Anderson fails to specify those upon which she relies. Instead, Anderson simply asserts that

> Rizza charges a greater upcharge in credit transaction [sic] because the price is initially quoted as a so many dollars per monthly payment, a relatively small amount. In cash sales, the price is generally quoted as the full dollar amounts which is much larger sum. The difference between the purchase price for the extended warranty in the financed transaction and the amount paid in cash transactions is a finance charge.

(Pl.'s Comp. at 6–7.)

The cash/credit differential argument presented in Anderson's Complaint was similarly addressed in *Gibson*, 112 F.3d at 286. There, Chief Judge Posner opined that

> the claim has merit only if the dealer's markup on third-party charges is *systematically* higher on sales to credit customers than on sales to cash customers. If a dealer merely charges what the traffic will bear, the fact that a particular credit customer may be paying a higher mark-up than a particular cash customer would not transform the difference in mark-ups into a finance charge; it would have in fact no causal relation to the extension of credit.

*Id.* at 286 (emphasis added).

Here, Anderson fails to come forward with any evidence, beyond the conclusory allegations in her Complaint, showing that Rizza "systematically" charges credit customers more than cash customers. Indeed, Anderson concedes as much in her response brief, where, in a footnote, she "requests that the court deny summary judgment or order a continuance so that she may take discovery pursuant to Fed.R.Civ.P. 56(f)." (Pls.' Resp. Br. at 8, n. 5). Because Anderson's "request" for additionally discovery is not properly before the court, *Farmer v. Brennan*, 81 F.3d 1444, 1449 (7th Cir.1996) (A "party seeking further time to respond to a summary judgment motion must give an adequate explanation to the court of the reasons why the extension is necessary."), and she fails to allege facts consistent with *Gibson's* mandate, Anderson may not recover statutory damages under TILA. Accordingly, the court grants Defendant's Motion for Summary Judgment on the TILA claims.

## II. ICFA Claim

Anderson alleges that Rizza's E.S.C. misrepresentations also violate the ICFA. Although the ICFA, unlike TILA, is a general prohibition against fraud, *Totz v. Continental Du Page Acura*, 236 Ill.App.3d 891, 177 Ill. Dec. 202, 602 N.E.2d 1374, 1380 (1992), Anderson may not avail herself of its protections.

> To state a claim under the [ICFA], a complaint must set forth specific facts that show (1) a deceptive act or practice by the defendant; (2) the defendant's intent that the plaintiff rely on the deception; (3) the deception occurred in the course of conduct involving a trade or commerce; and (4) the consumer fraud proximately caused the plaintiff's injury.

*Perona v. Volkswagen of America, Inc.*, 292 Ill.App.3d 59, 225 Ill.Dec. 868, 684 N.E.2d 859, 864 (1997) Notably, Illinois courts do not require a showing of actual reliance, *Martin v. Heinold Commodities, Inc.*, 163 Ill.2d 33, 205 Ill.Dec. 443, 643 N.E.2d 734, 754 (1994), but the Illinois Supreme Court recently reaffirmed the proximate cause requirement in *Zekman v. Direct Am. Market-*

*ers, Inc.,* 182 Ill.2d 359, 372, 231 Ill.Dec. 80, 695 N.E.2d 853, 860 (1998).[8]

As discussed above, Anderson's deposition testimony reveals that her pecuniary harm was not proximately caused by the allegedly deceptive RIC. Her intent to pay the quoted E.S.C. price was solidified before she ever saw or ratified the RIC under which she was ultimately bound. In short, because Anderson cannot provide evidence of the causal relationship between Rizza's conduct and the price she paid for the E.S.C., the court must grant summary judgment in favor of Rizza on the ICFA claim.

### III. CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion for Summary Judgment on Counts I and II.[9]

IT IS SO ORDERED.

---

8. Anderson expends considerable time arguing that proximate cause under the ICFA is the same as reliance, and therefore, not a necessary element to recovery. While there is some degree of interrelationship between reliance and proximate cause, the court need not resolve the subtleties of this esoteric issue because Anderson is unable to show either reliance or proximate cause.

9. Based on this ruling, the court denies Anderson's Motion for Class Certification as moot. *Cowen v. Bank United of Texas,* 70 F.3d 937, 941 (7th Cir.1995); *Allen v. Aronson Furniture Co.,* 971 F.Supp. 1259, 1261 (N.D.Ill.1997).