DELMAR KAMPEN, d/b/a Kampen Farms, Plaintiff-Appellant, v. THE DEPARTMENT OF TRANSPORTATION, Defendant-Appellee.

Second District   No. 2—85—0890

Opinion filed December 11, 1986.

John A. Leemon, of Mt. Carroll, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Rita M. Novak, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

This is an appeal from an order of the circuit court of Lee County which upheld a civil penalty imposed on plaintiff, Delmar Kampen, by the Illinois Department of Transportation. The facts are not disputed. Delmar Kampen and his wife are the owners of two business enterprises, Kampen Farms and Kampen Fertilizer, neither of which is incorporated. Delmar Kampen is the general supervisor of the businesses. In 1981, Kampen leased a cargo tanker for hauling anhydrous ammonia for business purposes. His employee, Kenneth Pierson, agreed to haul tankloads of the chemical on a commission basis to Kampen's property where it was stored in a holding tank. Pierson had some prior experience in hauling and unloading anhydrous ammonia.

The tanker was designed to be unloaded in the following manner. The operator connects hoses from the tanker to the storage tank and slowly opens valves on each to equalize the pressure. Then a power pump is put into operation. An outlet valve on the tanker opens auto-

matically as the flow begins. If the outlet valve does not open once the pump is in operation, it can be manually opened with a wrench designed for that purpose. The wrench should not be permanently attached to the valve. The tanker was equipped with several safety features. The outlet valve was designed to remain closed unless automatically opened by the flow of chemical. Also, a sudden change in pressure would close the valve to prevent the uncontrolled escape of the chemical. In addition, the outlet valve could be closed by either of two remote, manually operated levers located at opposite ends of the tanker.

Because Pierson had been trained on another type of tanker, he believed that the outlet valve had to be opened manually to start the flow of liquid before the pump could be started. The owner of the tanker had permanently attached a wrench to the outlet valve which Pierson regularly used to open it. Between March 20 and May 15, 1981, Pierson transported 46 loads of anhydrous ammonia and unloaded each using his own method. On two occasions, however, when he turned the handle to manually open the valve, it would not remain open. (It was in fact designed to remain closed.) On these occasions, Pierson used a vise grips to hold the valve open while he started the power pump. It is undisputed that fixing the vise grips to the handle and locking the valve open prevented the automatic closure of the valve and rendered the remote safety levers useless. On May 15, 1981, Pierson again opened the valve manually, starting the flow of ammonia, and used a vise grips to hold the valve open. As he went to start the power pump, however, one of the hoses through which the ammonia was passing ruptured, releasing a large cloud of gas into the air and causing substantial property damage, and injuring a fireman who had responded to the emergency. Pierson eventually stopped the escape of gas by shutting off a third valve connected directly to the pump.

The Illinois Hazardous Materials Transportation Act (the Act) (Ill. Rev. Stat. 1981, ch. 95½, par. 700—1 *et seq.*) delegates to the Department of Transportation authority to adopt rules and regulations for the safe transport of dangerous chemicals. (Ill. Rev. Stat. 1981, ch. 95½, pars. 700—4, 700—9.) It also authorizes the department to assess a civil penalty of no more than $10,000 against any person who "knowingly commits an act that is a violation of any rule or regulation." (Ill. Rev. Stat. 1981, ch. 95½, par. 700—11.) As designed, the tanker met all of the applicable regulations relating to outlet valves. Attachment of vise grips, however, rendered the safety devices useless and placed the tanker in violation of the outlet valve regulations.

After a hearing before an independent hearing officer, the Department of Transportation assessed a $4,500 civil penalty against plaintiff for violations of sections 173.33(h), 178.337—8(a)(2), and 178.337—11(c)(5) of the Illinois Hazardous Materials Transportation Regulations, all relating to outlet valves. The penalty was affirmed by the Secretary of Transportation and by the circuit court of Lee County on administrative review.

Plaintiff raises two issues on appeal: (1) whether a civil penalty may be imposed under the Act on an individual having no knowledge that his conduct violated the regulations, and (2) whether an individual may be held vicariously liable under the Act for his employee's actions. Kampen claims that a civil penalty can only be assessed under the Act if the individual is aware both that his conduct is dangerous and that it violates the regulations. He claims that Pierson did not have the requisite knowledge. We disagree.

■ In *United States v. International Minerals & Chemical Corp.* (1971), 402 U.S. 558, 29 L. Ed. 2d 178, 91 S. Ct. 1697, the United States Supreme Court reviewed a criminal charge brought under section 834(f) of the United States Code (18 U.S.C. sec. 834(f)) which authorizes criminal penalties against anyone who "knowingly violates" an Interstate Commerce Commission regulation relating to transportation of corrosive liquids. The court stated that it would be improper without a clear legislative mandate to interpret the statute as offering an exception to the general rule that ignorance of the law is no excuse for failure to comply with it. (*United States v. International Minerals & Chemical Corp.* (1971), 402 U.S. 558, 563, 29 L. Ed. 2d 178, 182, 91 S. Ct. 1697, 1701-02.) The court concluded that where "dangerous or deleterious devices or products *** are involved, the probability of regulation is so great that anyone who is aware that he is in possession of them *** must be presumed to be aware of the regulation." (402 U.S. 558, 565, 29 L. Ed. 2d 178, 183, 91 S. Ct. 1697, 1701-02.) The Act at issue here is in fact worded more consistently with the *International Minerals* construction than was the criminal statute there. The language, imposing a penalty against anyone who "knowingly commits an act that is a violation of any rule or regulation" (Ill. Rev. Stat. 1981, ch. 95½, par. 700—11), plainly requires only that the individual act knowingly, not that he appreciate the illegality of his conduct (See *In re Marriage of Logston* (1984), 103 Ill. 2d 266 (courts must give effect to unambiguous statutory language)). In addition, following the *International Minerals* rationale, it is enough that Pierson was aware that he was transporting a highly dangerous chemical—he must be presumed to have been aware of the applicable

regulations.

Plaintiff's reliance on *People v. Wallace* (1979), 77 Ill. App. 3d 979, and *People v. Arnold* (1972), 3 Ill. App. 3d 678, is misplaced because those cases dealt with a criminal statute and a judicially implied mental-state requirement. By contrast, the civil statute here contains an express and limited knowledge requirement. Additionally, those cases did not involve inherently dangerous products that typically are stringently regulated. See, *e.g., Liparota v. United States* (1985), 471 U.S. 419, 85 L. Ed. 2d 434, 105 S. Ct. 2084 (actor without knowledge that he has violated a statute may nevertheless be punished where his conduct is of a type which a reasonable person would realize is strictly regulated).

■ When he attached vise grips to the outlet valve, Pierson realized that he was locking it open and that the grips must be removed in order to close the valve. This knowledge was clearly sufficient for civil liability under the Act. Because we conclude that Pierson must be presumed to have had knowledge of the regulations and, therefore, of the safety devices they required, Kampen's contention that Pierson was unaware that he had inactivated the valve's conforming safety features is irrelevant.

■ ■ Plaintiff next argues that the statute authorizes holding only business entities, not individuals, vicariously liable for the acts of their agents and that, because the statute is penal, vicarious liability is available only where the employer had directed, coerced, or participated in his employee's conduct. The Act imposes liability for the conduct of "[a]ny person." (Ill. Rev. Stat. 1981, ch. 95½, par. 700—11.) "Person" is defined as "any natural person or individual, governmental body, firm, association, partnership, copartnership, joint venture, company, corporation, joint stock company, trust, estate or any other legal entity or their legal representative, agent, or assigns." (Ill. Rev. Stat. 1981, ch. 95½, par. 700—3.) We find no support for plaintiff's contention that the words "agent or assigns" were intended to apply only to the business entities listed in the Act. A statute must be construed in a way that will favor uniform application (*Gleasman v. Greater Rockford Airport Authority* (1975), 34 Ill. App. 257, 260; *Graham v. Board of Education* (1973), 15 Ill. App. 3d 1092, 1099) and promote the legislature's intent (*People v. Robinson* (1982), 89 Ill. 2d 469, 475; *Miller v. Department of Registration & Education* (1979), 75 Ill. 2d 76, 81). The purpose of the Act is to minimize the health and property risks inherent in transporting hazardous materials. (Ill. Rev. Stat. 1981, ch. 95½, par. 700—2.) Plaintiff's interpretation of the Act would insulate from liability individuals who transport large

quantities of dangerous chemicals through agents while holding business entities liable for the same conduct. We do not believe that the legislature intended so irrational a result and conclude that the Act authorizes holding any employer vicariously liable for the acts or omissions of his employee in transporting hazardous chemicals.

■ Finally, we reject plaintiff's contention that the Act is penal and that vicarious liability is thus appropriate only when criminal liability or punitive damages could be vicariously imposed. Section 11 of the Act clearly authorizes a *civil* penalty. (Ill. Rev. Stat. 1981, ch. 95½, par. 700—11.) Where the legislature clearly expresses an intention to establish a civil penalty, a challenger must produce the clearest evidence that the statute's effect and purpose are punitive in order to negate the legislature's classification. (*United States v. One Assortment of 89 Firearms* (1984), 465 U.S. 354, 365, 79 L. Ed. 2d 361, 370, 104 S. Ct. 1099, 1106, citing *United States v. Ward* (1980), 448 U.S. 242, 248-49, 65 L. Ed. 2d 742, 749, 100 S. Ct. 2636, 2641.) Plaintiff has produced no such proof here.

■ The Illinois Supreme Court has characterized as remedial those statutes which "introduce regulation conducive to the public good." (*Scott v. Association for Childbirth at Home, International* (1982), 88 Ill. 2d 279, 288.) In addition, the *Scott* court held that the potential imposition of a $50,000 fine does not make a statute penal where the monetary penalty is intended to facilitate enforcement of the regulations. (88 Ill. 2d 279, 288; see also *CPC International, Inc. v. Pollution Control Board* (1974), 24 Ill. App. 3d 203 (concluding that the penalty provisions of the Environmental Protection Act are primarily enforcement aids).) We conclude that the Illinois Hazardous Materials Transportation Act is clearly the type of remedial legislation recognized in *Scott*.

Plaintiff does not challenge the Department's conclusion that Pierson was his agent acting within the scope of his employment. We conclude that the civil penalty was therefore properly imposed on plaintiff for Pierson's conduct.

The judgment of the circuit court of Lee County is affirmed.

Affirmed.

NASH, P.J., and WOODWARD, J., concur.