FIRST AMERICAN TITLE INSURANCE COMPANY *et al.*, Plaintiffs-Appellees, v. TCF BANK, F.A., f/k/a TCF Savings Bank, F.S.B., Defendant-Appellant.—FIRST AMERICAN TITLE INSURANCE COMPANY *et al.*, Plaintiffs-Appellants, v. TCF BANK, F.A., f/k/a TCF Savings Bank, F.S.B., Defendant-Appellee.

Second District    Nos. 2—95—1366, 2—95—1391 cons.

Opinion filed February 7, 1997.—Rehearing denied March 10, 1997.

HUTCHINSON, J., specially concurring.

Rinda Y. Allison and E. Kenneth Friker, both of Klein, Thorpe & Jenkins, Ltd., of Chicago, for TCF Bank.

David A. North, of Rockford, for First American Title Insurance Company and Winnebago County Title Company.

Ronald A. Damashek and Gregory S. Markow, both of Holleb & Coff, of Chicago, for *amicus curiae.*

JUSTICE McLAREN delivered the opinion of the court:

The defendant, TCF Bank, appeals the trial court's order of April 27, 1995, denying the defendant's motion for summary judgment and granting partial summary judgment in favor of the plaintiffs, First American Title Insurance Company (First American) and Winnebago County Title Company (Winnebago). The plaintiffs appealed the court's denial of part of their summary judgment motion, and the defendant appealed the court's partial granting of the plaintiffs' summary judgment motion. In addition, the Illinois Land Title Association (Association) filed an *amicus curiae* brief. We affirm in part, reverse in part, and remand for further proceedings.

The following facts are taken from the pleadings and supporting documents and affidavits. On May 3, 1989, the defendant granted Patricia Bartholomew a 10-year, $40,000 revolving line of credit secured by a mortgage on Bartholomew's home located at 820 South 19th Street, Rockford, Illinois. A revolving line of credit is an arrangement between a lender and a debtor in which the lender may from time to time make loans or advances to the debtor. Ill. Rev. Stat. 1989, ch. 17, par. 6405. Further, "[a]ny mortgage *** given to secure a revolving credit loan may *** secure not only the existing indebtedness, but also such future advances *** made within [the next] twenty

years." Ill. Rev. Stat. 1989, ch. 17, par. 312.3. On May 5, 1989, the defendant recorded the mortgage document with the Winnebago County recorder of deeds. The document states in part: "This mortgage secures a revolving line of credit under which advances, payments and readvances may be made from time to time."

On May 18, 1990, TCF Mortgage Corporation (TCF Mortgage) granted Bartholomew a traditional loan secured by Bartholomew's home; the same property used to secure the defendant's loan. This subsequent mortgage was recorded on May 23, 1990. Plaintiff Winnebago acted as closing agent and title insurer for this second loan for plaintiff First American. Plaintiff Winnebago guaranteed that TCF Mortgage was not subject to any "covenants, conditions or restriction" under which TCF Mortgage's lien would be subordinated. On May 18, 1990, the defendant sent plaintiff Winnebago a "payoff" letter stating the amount to be paid in full to satisfy the defendant's loan. The letter indicated the payoff amount was $35,785.78. The letter also stated: "This is a credit line; checks may be outstanding. Please call *** for an updated payoff figure before closing." On May 18, 1990, plaintiff Winnebago sent a check to the defendant for the sum requested in the payoff letter. On the face of the check appeared the words "For Mortgage Payoff." The defendant cashed the check on May 23, 1990. At that time, Bartholomew's credit-line mortgage balance was reduced to zero. However, the defendant did not release its lien on Bartholomew's home. Subsequently, Bartholomew borrowed almost $40,000 on the defendant's line of credit. When Bartholomew defaulted, the defendant foreclosed its mortgage on her home. The plaintiffs brought this suit seeking release of the defendant's lien, damages, and the placement of TCF Mortgage's lien in first lien position. The plaintiffs filed a motion for partial summary judgment, and the defendant filed a motion for summary judgment. The defendant and the plaintiffs both appeal. The cases have been consolidated.

The trial court granted partial summary judgment in the plaintiffs' favor, ruling that (1) as a matter of law, the defendant was not required to release the lien; and (2) as a matter of equity, the defendant must either release the lien or return the funds forwarded by plaintiff Winnebago to pay off the mortgage. The trial court ordered the defendant either to pay back the payoff money or to release its lien. The parties and the Association essentially raise two issues on appeal: (1) whether the defendant was legally obligated to release its lien; and (2) whether the defendant was obligated, under principles of equity, either to release the lien or to return the payoff funds to plaintiff Winnebago.

Summary judgment is proper when the pleadings, depositions,

and affidavits demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1994). In adjudicating a summary judgment motion, a court must construe the evidence strictly against the movant and liberally in favor of the nonmoving party. *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995); *Guerino v. Depot Place Partnership*, 273 Ill. App. 3d 27, 30 (1995). "[S]ummary judgment is encouraged to aid the expeditious disposition of a lawsuit." *Espinoza*, 165 Ill. 2d at 113. However, it is a drastic means of resolving litigation and should be allowed only when the moving party's right to judgment is clear and free from doubt. *Guerino*, 273 Ill. App. 3d at 30. "Therefore, where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact." *Espinoza*, 165 Ill. 2d at 114. We conduct a *de novo* review of an order granting or denying summary judgment. *Espinoza*, 165 Ill. 2d at 113.

■ After reviewing the applicable statutes and the pleadings, along with the supporting documents and affidavits, we determine that the defendant was not legally obligated to release its lien on Bartholomew's home. Contrary to the opinion of the special concurrence, we do not determine that Winnebago was prevented "from requesting a release of the Bartholomew lien." 286 Ill. App. 3d at 276. The mortgage instrument provides in part:

> "**Termination of this Mortgage**. If borrower pay [*sic*] to Lender all of the amounts owed to Lender under this Mortgage and under the agreement, and keeps all promises made in this Mortgage and in the Agreement, then Lender's rights in the Property will end. Lender will send Borrower a document stating this and Borrower can file it with the County in which the Property is located."

Further, the agreement between Bartholomew and the defendant provides in part that the defendant "will not release the lien until [Bartholomew has] paid [the defendant] everything [she] owe[s] [the defendant] under this agreement and [has] cancelled this agreement." Thus, under the clear and unambiguous language of the mortgage and agreement, the defendant had no obligation to release its lien on Bartholomew's property until or unless Bartholomew cancelled the agreement.

Further, the applicable statute clearly indicates that the defendant was not obligated to release the lien without a request from Bartholomew. It is well established that in interpreting a statute we must give the language used by the legislature its plain and ordinary meaning. *Boaden v. Department of Law Enforcement*, 171 Ill. 2d 230,

237 (1996). Section 4.1 of the Interest Act mandates that the request for a release must come directly from the borrower. Ill. Rev. Stat. 1989, ch. 17, par. 6405. The Interest Act permits a lender to take an interest in real property to secure a revolving credit agreement "in excess of $5,000." Ill. Rev. Stat. 1989, ch. 17, par. 6405. The Interest Act also provides that "[a]ny request by a borrower to release a security interest under a revolving credit arrangement shall be granted by the lender provided the borrower renders payment of the total outstanding balance as required by this Section before the security interest of record may be released." Ill. Rev. Stat. 1989, ch. 17, par. 6405. We determine that the clear and unambiguous language of the statute explicitly limits who may make a proper request for a release of a lien to the borrower alone. Neither party has alleged that Bartholomew requested a release from the defendant. Thus, we determine that the trial court correctly ruled that, as a matter of law, the defendant was not obligated to release Bartholomew's lien after cashing plaintiff Winnebago's payoff check.

The plaintiffs argue that the last sentence of section 4.1 mandates a lender to release a mortgage lien upon "[a]ny request" and full payment of the account. However, when the phrase "[a]ny request" is read in context, it is clear that it refers to how the request may be made, not who may make it. The entire phrase reads "[a]ny request by a borrower." Thus, the plaintiffs' argument fails.

The plaintiffs also cite section 2 of the Mortgage Act (Ill. Rev. Stat. 1989, ch. 95, par. 52) to support their argument. Section 2 provides in part:

> "Every mortgagee of real property *** having received full satisfaction and payment of all such sum or sums of money as are really due to him from the mortgagor *** [shall] make, execute and deliver to the mortgagor *** an instrument in writing *** releasing such mortgage *** or shall deliver that release to the recorder or registrar for recording or registering." Ill. Rev. Stat. 1989, ch. 95, par. 52.

However, the plaintiffs fail to recognize that the legislature provided different requirements for traditional mortgages and revolving credit loans. Section 2 of the Mortgage Act (Ill. Rev. Stat. 1989, ch. 95, par. 52) applies to "mortgages," while section 4.1 of the Interest Act (Ill. Rev. Stat. 1989, ch. 17, par. 6405) and section 5d of the Illinois Banking Act (Ill. Rev. Stat. 1989, ch. 17, par. 312.3) apply to "revolving credit loans." Because the case at bar involves a revolving credit loan, and not a traditional mortgage, the plaintiffs' argument fails.

■ Next, the plaintiffs and the Association argue that the plaintiffs acted as an agent for Bartholomew, and, thus, Bartholomew

requested a release through the plaintiffs. It is well established that an agent's authority may be either actual or apparent. See *FDL Foods, Inc. v. Kokesch Trucking, Inc.*, 233 Ill. App. 3d 245, 256 (1992). Actual authority may be granted either expressly or impliedly. *FDL Foods, Inc.*, 233 Ill. App. 3d at 256. Further, "[a]n 'apparent agent' is a person who, whether authorized or not, reasonably appears to third persons, because of acts of another, to be authorized to act as agent for such other person." *FDL Foods, Inc.*, 233 Ill. App. 3d at 256, citing *Mitchell Buick & Oldsmobile Sales, Inc. v. National Dealer Services, Inc.*, 138 Ill. App. 3d 574, 582 (1985). However, it is well established that the authority of an agent, whether actual or apparent, can only be established upon the words and conduct of the alleged principal, not the alleged agent. *Tierney v. Community Memorial General Hospital*, 268 Ill. App. 3d 1050, 1062 (1994); *Wadden v. Village of Woodridge*, 193 Ill. App. 3d 231, 239 (1990). In this case, there is nothing in the record to indicate that the defendant should have reasonably believed that the plaintiffs possessed the actual or apparent authority to request a release on Bartholomew's behalf. Thus, the plaintiffs' argument fails.

We now address whether the trial court correctly ruled that the defendant was obligated, under principles of equity, either to release its lien or to return the payoff funds to the plaintiffs. Although the trial court ruled that principles of equity apply to this case and ordered the defendant either to release its lien or to pay back the payoff money, the trial court did not articulate which equitable theory it applied.

■ The plaintiffs claim that equitable subrogation applies to this case. Our supreme court explained the doctrine in the following manner:

"The doctrine of subrogation is a creature of chancery. It is a method whereby one who has involuntarily paid a debt or claim of another succeeds to the rights of the other with respect to the claim or debt so paid. [Citation.] The right of subrogation is an equitable right and remedy which rests on the principle that substantial justice should be attained by placing ultimate responsibility for the loss upon the one against whom in good conscience it ought to fall. [Citation.] Subrogation is allowed to prevent injustice and unjust enrichment but will not be allowed where it would be inequitable to do so. [Citation.] There is no general rule which can be laid down to determine whether a right of subrogation exists since this right depends upon the equities of each particular case." *Dix Mutual Insurance Co. v. LaFramboise*, 149 Ill. 2d 314, 319 (1992).

Thus, if this theory applies to this case, the subrogee (plaintiffs) would stand in the place of the debtor (Bartholomew). *Dix Mutual Insurance Co.* 149 Ill. 2d at 319. Accordingly, the defendant in this case would be obligated to release its lien.

■ The plaintiffs also argue that principles of equitable estoppel should apply to this case. "Generally, the doctrine of equitable estoppel may be invoked when a party reasonably and detrimentally relies on the words or conduct of another." *Brown's Furniture, Inc. v. Wagner*, 171 Ill. 2d 410, 431 (1996). Equitable estoppel is based on the principle that one may not act in a certain manner and then take an inconsistent position which prejudices another who acted in reliance of the act. *Empire Fire & Marine Insurance Co. v. Faith Truck Lines, Inc.*, 178 Ill. App. 3d 356, 359 (1988). Thus, if this theory applies, the defendant would be estopped from asserting its priority lien status. See *Empire Fire*, 178 Ill. App. 3d at 359.

■ We note, in passing, that the equitable principle of unjust enrichment may also apply to this case. Unjust enrichment applies where: (1) a party performs a service which benefits another party; "(2) the benefitting party accepts the benefit; and (3) the circumstances indicate that the service was not intended to be gratuitous." *Village of Clarendon Hills v. Mulder*, 278 Ill. App. 3d 727, 735 (1996). Thus, under this theory, the defendant would be required either to release its lien or to return the benefit it received from the plaintiffs; *i.e.*, the money given to pay off Bartholomew's debt. See *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160 (1989) ("unjust enrichment underlies a number of legal and equitable actions and remedies, including *** the legal actions of *assumpsit* and restitution or quasi-contract").

■ After reviewing the record, we determine that summary judgment is precluded because a genuine issue of material fact exists. 735 ILCS 5/2—1005(c) (West 1994). The plaintiffs alleged that Winnebago requested a release from the defendant at the same time it sent the payoff check. The defendant denies this allegation. However, neither party has conclusively supported its allegation regarding this issue. Further, neither party provides any information regarding whether, under the circumstances, the defendant knew or should have known that plaintiff Winnebago expected a release in exchange for the payoff check. Moreover, neither party provides any information regarding whether plaintiff Winnebago reasonably relied on the defendant's act of cashing the payoff check as an indication that the defendant intended to release its lien. Therefore, there is a material issue of fact as to whether the plaintiffs are entitled to equitable relief and the nature and extent thereof. Accordingly, we reverse

that portion of the trial court's judgment granting partial summary judgment in the plaintiffs' favor and remand for further proceedings.

■ Finally, the defendant argues that a judgment ordering release or payback of the money would be contrary to section 4.1 of the Interest Act (Ill. Rev. Stat. 1989, ch. 17, par. 6405). We disagree. We acknowledge that equity must follow the law and that the legislature may limit the equitable power of the courts. *In re Liquidation of Security Casualty Co.*, 127 Ill. 2d 434, 447 (1989). However, nothing in the Interest Act expressly precludes equitable remedies. Further, the Interest Act does not address the issue of returning the funds from a payoff check when equity so demands. Thus, this argument fails.

Finally, unlike the opinion of the special concurrence, we do not wish to speculate as to what evidence may or may not be sufficient to sustain the relief the trial court may ultimately grant or deny, nor do we deem it necessary to opine as to how the trial court should view the evidence presented upon a hearing on the merits.

That part of the judgment of the circuit court of Winnebago County denying relief as a remedy at law is affirmed. That part of the judgment granting relief in equity is reversed and the cause is remanded for further proceedings in accordance with this opinion.

Affirmed in part and reversed in part; cause remanded.

RATHJE, J., concurs.

JUSTICE HUTCHINSON, specially concurring:

I concur in the majority's judgment. I agree a genuine issue of material fact exists in the form of whether Winnebago requested a release from defendant. However, because I believe the majority does not sufficiently delineate what plaintiffs must prove to be entitled to equitable relief, I write separately to provide the trial court with guidance upon remand.

Initially, the reasonableness of any reliance or expectation forming the basis for equitable relief must be determined in light of section 4.1 of the Interest Act. The majority determined that section 4.1 clearly and unambiguously prevented Winnebago from requesting a release of the Bartholomew lien. The fact that the action out of which arises Winnebago's need to seek equitable relief is beyond the title company's legal authority militates strongly against a finding of reasonableness. How may a party reasonably rely, or reasonably expect something in return, on the basis of an action the law does not permit the party to take?

Assuming this hurdle can be cleared, any equitable theory

potentially forming the basis of a ruling in favor of plaintiffs should not be premised exclusively on evidence that Winnebago sent defendant what the title company alleges was a "payoff" check on the revolving credit line. Such evidence does not, standing alone, establish that (1) Winnebago reasonably expected a release of defendant's lien; (2) defendant reasonably should have known Winnebago expected a release; (3) Winnebago's reliance was reasonable; (4) Winnebago reasonably expected its lien to take priority over defendant's lien; (5) defendant reasonably should have known Winnebago expected its lien to take priority over defendant's lien; and (6) Winnebago paid down the revolving credit line "involuntarily."

Basing any of the preceding findings exclusively on the paying down of the Bartholomew revolving credit line would require defendant to act as Winnebago's attorney—and, failing this, to be prescient. Defendant should not be required to divine the reasons for and consequences of actions undertaken by Winnebago. Sophisticated business entities engaged in arm's-length transactions should not be duty bound to decipher and discern the motivations for business decisions made by other sophisticated business entities whose personnel fail to acquaint themselves with the clear and unambiguous meaning of the law. On remand, if the trial court discovers only that the parties exchanged paperwork under the impression that the revolving credit line was a traditional mortgage—*i.e.*, neither party understood that a revolving credit line is governed by different legal principles—I believe that the trial court should find Winnebago's reliance, its expectation of a release of defendant's lien, and the expectation of gaining first priority over this lien unreasonable.

This will be a difficult case on remand. One of these parties will be burdened with $40,000 of apparently uncollectible debt. Such an outcome creates a powerful and just incentive for sophisticated lending institutions and their associated entities to read and abide by the law. Persons are presumed to know the law and ignorance of the same is no excuse. See *In re Cheronis*, 114 Ill. 2d 527, 535 (1986) (stating that attorney's commingling of client funds is not excused because attorney was unaware such conduct was prohibited); *Pyle v. Ferrell*, 12 Ill. 2d 547, 554-55 (1958) (stating that party's failure to take remedial action is not excused because he did not understand his mineral rights could be sold to satisfy delinquent taxes without sale of attendant land); *Singh v. Department of Professional Regulation*, 252 Ill. App. 3d 859, 868 (1993) (stating that pharmacist's lack of compliance with controlled substances reporting requirements not excused because he was unaware of such requirements); *In re Estate of Winters*, 239 Ill. App. 3d 730, 736 (1993) (stating that party is

278

presumed aware of statutory probate claim period), quoting *In re Estate of Malone*, 198 Ill. App. 3d 960, 964 (1990) (same); *Kampen v. Department of Transportation*, 150 Ill. App. 3d 578, 581 (1986) (stating that party transporting corrosive liquids is presumed aware of regulations governing this activity), citing *United States v. International Minerals & Chemical Corp.*, 402 U.S. 558, 563, 29 L. Ed. 2d 178, 182, 91 S. Ct. 1697, 1701-02 (1971). This fundamental notion must apply equally to mammoth corporations as it does to the common man. Equity is not a palliative for a party's folly, nor does a harsh result convert the ignorance of one party into an injustice by another.

I note, in further passing, plaintiffs did not raise the question of unjust enrichment in their briefs. Therefore, I believe it is unnecessary to discuss this equitable doctrine.