

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-31-2006

# Westchester Fire Ins v. Household Intl Inc

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1989

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Westchester Fire Ins v. Household Intl Inc" (2006). *2006 Decisions.* Paper 1692.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1692

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 05-1989
_____

WESTCHESTER FIRE INSURANCE CO.
v.
HOUSEHOLD INTERNATIONAL, INC.;
HOUSEHOLD RETAIL SERVICES, INC.;
HOUSEHOLD BANK (SB) N.A.;
BENEFICIAL NATIONAL BANK USA

Appellants
_____

Appeal from the United States District Court
for the District of Delaware
(D.C. No. 02-cv-01328)
District Judge:  Honorable Joseph J. Farnan, Jr.
_____

Argued January 17, 2006
Before:  BARRY, AMBRO and ALDISERT, <u>Circuit Judges</u>.

(Filed:  January 31, 2006)

Christopher C. Dickinson, Esq. (Argued)
Jenner & Block
One IBM Plaza
Chicago, IL 60611
        *Counsel for Appellants*


Michael T. Glascott, Esq. (Argued)
Randolph E. Sarnacki, Esq.
Lustig & Brown LLP
400 Essjay Road, Suite 200
Buffalo, New York 14221-8228

J.R. Julian, Esq.
824 Market Street
P.O. Box 2171
Wilmington, DE 19899
       *Counsel for Appellees*       _____

OPINION OF THE COURT
_____

ALDISERT, <u>Circuit Judge</u>

Defendants in this declaratory judgment action, Household International, Inc., Household Retail Services, Inc., Household Bank, N.A., and Beneficial National Bank USA ("Policyholders"), appeal from a stipulated entry of judgment in favor of Plaintiff Westchester Fire Insurance Company ("Westchester") following the denial of several motions to compel discovery. The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) and we have appellate jurisdiction under 28 U.S.C. § 1291. We will affirm.

I.

Because we write only for the parties, who are familiar with the facts, procedural history and contentions presented, we will only briefly revisit them here.

This action stems from a barrage of lawsuits filed against Policyholders by consumers who alleged that salesmen and others swindled them in the sale of home satellite television systems, furniture, vinyl siding and other products. Although Policyholders' primary role in these sales was to provide financing to the consumers by way of private label credit card accounts, the consumers' lawsuits sought to hold Policyholders responsible for the misconduct of the salesmen and distributors.

2

At the time these claims arose, Westchester insured Policyholders under umbrella policies ("the Policies") that contained a Financial Institutions Endorsement, or FIE.[1] The Policies were obtained through Policyholders' insurance brokers, who are not parties to this litigation. The FIE provides:

> This policy does not apply to "Bodily Injury", "Property Damage", "Personal Injury", or "Advertising Injury" . . . arising out of any negligent act, error, omission or breach of duty in performing or failing to perform banking or "fiduciary" services, or in giving financial, economic or investment advice, or in rendering investment, advisory or management services.

In March 1998, Beneficial filed a complaint in the District Court for the District of Delaware contending that Westchester had a duty to defend and insure against these claims. *See Beneficial Nat'l Bank USA v. Westchester Fire Ins. Co.*, No. 98-115 (slip op.) (D. Del. Oct. 13, 2000). Following discovery, the District Court determined that the FIE in the policy issued by Westchester was unambiguous and relieved it from the obligation to cover claims arising from Beneficial's issuance of credit card financing. On appeal, this Court affirmed. *See Beneficial Nat'l Bank, USA v. Westchester Fire Ins. Co.*, 276 F.3d 575 (3d Cir. 2001) (unpublished opinion).

Following this decision, the Policyholders initiated another action in the Northern District of Illinois, alleging, *inter alia*, common law fraud, violations of Illinois' and New Jersey's consumer fraud acts, and unjust enrichment, all arising from Westchester's sale

---

[1]In the early to mid-1990s, when Westchester sold the policies at issue, Household and Beneficial were wholly unrelated companies. Household and Beneficial subsequently merged on June 30, 1998.

of the policies (the "Illinois Action"). The essence of Policyholders' fraud claims is that Westchester tacitly represented that all of Policyholders' "core business functions," including banking operations, would be covered by the umbrella policies. They contend that the usual practice in the insurance industry is for the broker to send to the insurer a description of a company's core business functions. The insurer then provides a quote and ultimately issues a policy oriented around those core business functions. If there is an issue with respect to covering one of the company's business functions, the insurer is expected to raise the issue with the broker and detailed negotiations regarding the coverage then ensue.

Policyholders contend that, here, Westchester knew that banking operations were one of Policyholders' core business functions and that they expected that these operations would be covered by the Policies. Notwithstanding this knowledge, Policyholders argue, Westchester surreptitiously inserted the FIE and never raised any problem with insuring the banking operations. Policyholders also contend that the premiums they paid – approximately $85,000 by Beneficial for the policy period of July 1, 1994 to July 1, 1995 and approximately $100,000 by Household for that same period – far exceeded the actual values of the Policies.

In response, Westchester filed a mirror-image declaratory judgment action in the District Court for the District of Delaware seeking a declaration rejecting the claims asserted in the Illinois Action. The Court granted Policyholders' motion to stay pending resolution of the Illinois Action. In October 2002, the District Court for the Northern

4

District of Illinois granted Westchester's motion to transfer the Illinois Action to the District of Delaware. The District Court then consolidated the two actions. The parties thereafter agreed that Illinois law governs the Household policy and that New Jersey law governs the Beneficial policy.

After the District Court denied Westchester's motion to dismiss, *see Westchester Fire Ins. Co. v. Household Int'l.*, 286 F. Supp. 2d 369 (D. Del. 2003), Policyholders initiated discovery. On November 26, 2003, Policyholders served their First Set of Document Requests and their First Set of Interrogatories. They sought, *inter alia*, information relating to the drafting of the FIE; the drafters' intent; any internal guidelines Westchester uses to determine the scope of the FIE; Westchester's analysis of the FIE with respect to Household or Beneficial; claims similar to Policyholders' that were submitted to Westchester by an insured under a policy containing the FIE; and the identification of all persons who had a role in drafting the FIE. On April 19, 2004, Policyholders noticed the deposition of Westchester's corporate representative. The Rule 30(b)(6) notice identified deposition topics pertaining to, *inter alia,* Westchester's intent in both drafting the FIE and including it in the Policies.

Westchester objected to the discovery requests on the grounds of burdensomeness, privilege and irrelevancy and refused to designate a corporate representative. On June 19, 2004, Policyholders filed three motions to compel seeking: (1) discovery relating to the drafting, meaning, interpretation and intent behind the FIE; (2) discovery related to the factual underpinnings of Westchester's denials of certain allegations in Policyholders'

5

complaint, and of its defenses to Policyholders' claims; and (3) designation of Westchester's corporate representative to testify on these topics.

In response, Westchester reasserted its objections, arguing that there was no dispute as to the meaning of the FIE and that Policyholders' requests were cumulative and irrelevant. Westchester also filed a motion for a protective order seeking to limit the scope of the depositions of Westchester's Rule 30(b)(6) witnesses and to vacate or limit Policyholders' document requests.

On September 14, 2004, the District Court held oral argument on the discovery motions. The District Court determined that prior to permitting discovery into Westchester's alleged fraudulent intent, Policyholders would have to prove through the testimony of their insurance brokers that they specifically requested coverage for Policyholders' banking operations.

On November 18, 2004, Policyholders filed a supplemental brief containing broker testimony showing that: (1) the brokers conveyed information to Westchester concerning the nature of Policyholders' businesses, including the credit card operations; (2) the brokers intended to procure coverage for all of Policyholders' business functions; (3) that Westchester's underwriters offered premium quotes and bound coverage without requesting any additional information; and (4) if the FIE had been presented by Westchester as taking away coverage, there would have been much more contemporaneous correspondence.

In a January 5, 2005 Memorandum Opinion and Order, the District Court denied Policyholders' motions to compel written and oral discovery relating to the FIE, and denied Westchester's motion for a protective order as moot. The pertinent portion of the Opinion states:

> After reviewing the deposition testimony, Defendants' arguments, and documents provided in support of Defendants' motions to compel discovery, I conclude that Defendants have not demonstrated the relevance of the discovery requested with regard to the FIE. Defendants do not contend that Westchester withheld from Defendants or their brokers the existence or the contents of the FIE at any time during negotiation of the purchase of the umbrella policy. Rather, Defendants focus on the parties' contemporaneous intent, understanding, and representations with regard to the FIE's meaning. I find that there is no testimony suggesting that Defendants' insurance brokers requested or relied upon having the type of coverage that the FIE excludes . . . . Notwithstanding the liberal discovery standard in the Third Circuit, for these reasons I conclude that Defendants have not demonstrated that discovery as to the meaning, scope, interpretation, drafting, or origin of the FIE is relevant to their fraud claim against Westchester, or that such discovery is reasonably calculated to lead to the discovery of admissible evidence. Thus, I will deny Defendant's Motion to Compel discovery relating to [the FIE].

Policyholders then moved to certify the Order for immediate appellate review pursuant to 28 U.S.C. § 1292(b), or, in the alternative, for entry of judgment in favor of Westchester on all remaining claims to enable Policyholders to appeal the otherwise interlocutory order. The District Court denied the motion to certify an interlocutory appeal, but granted the motion for entry of judgment. Policyholders then appealed.

II.

We generally review a decision to grant a motion to compel for abuse of discretion. *See In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661 (3d Cir. 2003). We

7

will not upset a district court's control of discovery "except upon the clearest showing that the procedures have resulted in actual and substantial prejudice to the complaining litigant." *In re Fine Paper Antitrust Litig.*, 685 F.2d 810, 818 (3d Cir. 1982) (quotation omitted). When a discovery order is based upon the interpretation of a legal precept, however, our review is plenary. *In re Cendant Corp. Sec. Litig.*, 343 F.3d at 661.

III.

For the purposes of our analysis, the information that Policyholders seek to discover can be divided into two categories. First, they have demanded information relating to the intent, drafting and formulation of the FIE generally. Second, they seek discovery regarding Westchester's intent regarding the FIE as it relates to them, specifically, whether the FIE was inserted into the policy with full knowledge that Household expected coverage for claims relating to its banking and credit services.

A.

With respect to the first category, we agree with Westchester that the information regarding the intent and drafting of the FIE as a general matter is irrelevant to Policyholders' fraud claims. Policyholders are simply attempting to relitigate our prior determination that the FIE unambiguously excludes this type of coverage. The clear intent of Westchester in drafting a provision that unambiguously excludes coverage for claims relating to banking services is, quite logically, to exclude coverage for banking services. Policyholders cannot circumvent our prior ruling by contending that Westchester did not understand the plain meaning of a policy provision that it drafted.

8

Although this Court employs a liberal discovery standard, *see Pacitti v. Macy's*, 193 F.3d 766, 777 (3d Cir. 1999), Policyholders have not persuaded us that information relating to the intent, drafting and formulation of the FIE is reasonably calculated to lead to the discovery of admissible evidence.

B.

With respect to the second category, we do not dispute the relevance of the information sought. Evidence regarding Westchester's knowledge of Policyholders' expectations goes to fraudulent intent, which is an element of fraudulent misrepresentation under both Illinois and New Jersey law. Nonetheless, we agree with the District Court that Policyholders have not made a sufficient preliminary showing that they can satisfy the other elements of a fraudulent misrepresentation claim. Accordingly, they are not entitled to discovery regarding Westchester's alleged fraudulent intent.[2]

---

[2]As an initial matter, Policyholders vigorously argue that they were entitled to full discovery once their claims survived Westchester's motion to dismiss. They contend that the District Court erred in requiring a preliminary showing before permitting discovery into Westchester's fraudulent intent and that neither the Federal Rules of Civil Procedure nor the caselaw permits a district court to structure discovery in this manner. We disagree. A district court has wide latitude in structuring discovery and its rulings will not be overturned absent a showing of clear abuse of discretion. *See McMullen* v. *Bay Ship Mgmt.*, 335 F.3d 215, 217 (3d Cir. 2003). Here, the District Court did not exceed the permissible bounds of discretion in requiring Policyholders to make a preliminary showing that they can satisfy other elements of their fraud claim – namely "representation" and "reasonable reliance" – before permitting discovery into fraudulent intent. *See Massachusetts School of Law at Andover, Inc. v. Am. Bar Ass.*, 107 F.3d 1026 (3d Cir. 1997) (holding that the district court did not exceed the permissible bounds of discretion by requiring a showing that the ABA considered plaintiffs' salaries in denying accreditation before permitting discovery into the ABA's development and implementation of the faculty salary standard). Indeed, even if we characterize the

9

Under both New Jersey and Illinois law, fraudulent misrepresentation has five elements: (1) a representation of material fact; (2) made with knowledge of its falsity; (3) with the intent to induce plaintiff to act; (4) that was relied upon by plaintiff to his detriment; and (5) that reliance is reasonable. *See Glazewski v. Coronet Ins. Co.,* 483 N.E.2d 1263, 1266 (Ill. 1985); *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 368 (N.J. 1997).

Here, Policyholders have not shown that Westchester made any material representation regarding the coverage of the policy. In the absence of an express request for a certain type of coverage, the mere issuance of an insurance policy does not constitute a representation that the policy covers everything the insured expects. Although the Supreme Court of Illinois has recognized that an insurer may make a tacit representation regarding the scope of coverage when it sells a policy that lacks any value whatsoever, *see Glazewski,* 483 N.E.2d at 1266, it has refused to extend this rule to cases where the policy does in fact have some value. *See Charles Hester Enterprises, Inc. v. Ill. Founders Ins. Co.*, 499 N.E.2d 1319, 1325 (Ill. 1986) (holding that plaintiffs failed to state a cause of action for tacit misrepresentation where the policy had some value); *see also Friesz ex rel. Friesz v. Farm & City Ins. Co.*, 619 N.W.2d 677, 681 n.1 (S.D. 2000)

---

District Court's requirement of an evidentiary showing as a *sua sponte* partial summary judgment on the fraud claims, Policyholders were given both notice and an opportunity to present evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986) (noting that district courts have inherent power to enter summary judgment *sua sponte* so long as the losing party is given notice and an opportunity to present evidence).

10

(distinguishing *Glazewski* on the ground that the policies at issue there had no value); *Johnson v. Safeco Ins. Co.*, 809 F. Supp. 602, 609 (N.D. Ill. 1992) (same); *but see Old Republic Ins. Co. v. Ness, Motley, Loadholt*, 2005 WL 991909 at *3 (N.D. Ill. Apr. 12, 2005) (rejecting the distinction between policies with some value and those with no value). Here, it is undisputed that the policy had some value. *See Household Int'l*, 286 F. Supp. 2d at 378. We therefore conclude that the Supreme Court of Illinois would not recognize Policyholders' tacit misrepresentation theory.[3]

We reach the same conclusion with respect to Policyholders' fraud claims under New Jersey law. Our research does not disclose any New Jersey case permitting the theory advanced by Policyholders. In the absence of a specific request for the type of coverage excluded by the FIE, we do not believe that the New Jersey Supreme Court would hold that an insurer's failure to notify an insured that it was not covering all of their business functions would constitute a representation that it was in fact covering all of their business functions. *See generally Wang v. Allstate Ins.*, 592 A.2d 527, 532 (N.J. 1991) (holding that there is no common law duty of a carrier or its agents to advise an insured concerning the possible need for higher policy limits upon renewal of the policy absent a special relationship).

---

[3]Although silence may constitute a misrepresentation under Illinois law, the silence must be accompanied by deceptive conduct or active concealment. *See Heider v. Leewards Creative Crafts*, *Inc.*, 613 N.E.2d 805, 814 (Ill. App. 2d 1993). Here, Westchester did not conceal anything – the Policies clearly and unambiguously stated that there was no coverage – and did not engage in any deceptive conduct that would transform its silence into a representation of coverage.

Moreover, even if Policyholders could show that Westchester made a representation regarding the scope of the policies, their fraud claim would nonetheless fail because any reliance would be unreasonable in light of the plain and unambiguous language of the Policies. Contrary to Policyholders' suggestion, the Policies are not contracts of adhesion. Household and Beneficial are large and sophisticated business entities that used professional insurance brokers to negotiate the specific terms of the Policies. We conclude as a matter of law that it would be unreasonable for Policyholders to rely on an alleged tacit misrepresentation when the lack of coverage is apparent from the face of the policy. *See First Am. Title Ins. Co. v. TCF Bank, F.A.*, 676 N.E.2d 1003 (Ill. App. 2d 1997) (Hutchinson, J., concurring) ("Sophisticated business entities engaged in arms-length transactions should not be duty bound to decipher and discern the motivations for business decisions made by other sophisticated business entities whose personnel fail to acquaint themselves with the clear and unambiguous meaning of the law."); *cf. AES Corp. v. Dow Chem. Co.*, 325 F.3d 174, 178-179 (3d Cir. 2003) (noting that the sophistication and relationship of parties should be considered in determining whether reliance is reasonable).

IV.

In addition to their common law fraud claim, Policyholders have brought causes of action under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFDPA") and New Jersey Consumer Fraud Act ("NJCFA"). We independently observe that the ICFDPA and NJCFA appear to apply to a broader range of deceptive and unfair conduct

12

than common law fraud, and that neither require proof of reasonable reliance.  *See generally Cox v. Sears Roebuck & Co.*, 647 A.2d 454, 462 (N.J. 1994); *Siegel v. Levy Org. Dev. Co., Inc.*, 607 N.E.2d 194, 198 (Ill. 1992).  Both in their briefs and at oral argument, however, Policyholders failed to make any argument based on the ICFDPA or the NJCFA.  Instead, they have treated the consumer fraud act claims as coterminous with the common law fraud claim.  We therefore refuse to volunteer on Policyholders' behalf a contention that they have made a sufficient showing under the ICFDPA and the NJCFA to entitle them to discovery on fraudulent intent, and we consider this argument waived. *Dillinger v. Caterpillar, Inc.*, 959 F.2d 430, 447 (3d Cir. 1992) ("'[A]bsent extraordinary circumstances, briefs must contain statements of all issues presented for appeal, together with supporting arguments and citations,' and 'under the specificity requirements of Fed. Rule of Appellate Procedure 28 and Third Circuit Rule 21, a passing reference to an issue in a brief will not suffice to bring that issue before this court on appeal.'") (quoting *Simmons v. City of Philadelphia*, 947 F.2d 1042, 1065-1066 (3d Cir. 1991)).

## V.

We have considered all contentions presented by the parties and conclude that no further discussion is necessary.  The judgment of the District Court will be affirmed.