NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 200628-U

NO. 4-20-0628

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 3, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| WENDY JABLOW, | ) | Appeal from the |
| Plaintiff-Appellant, | ) | Circuit Court of |
| v. | ) | Champaign County |
| STEPHEN MARSH and CUSTOM SERVICES | ) | No. 20CH77 |
| DEVELOPMENT CORPORATION, | ) | |
| Defendants-Appellees. | ) | Honorable |
| | ) | Jason M. Bohm, |
| | ) | Judge Presiding. |

_____

JUSTICE HARRIS delivered the judgment of the court.
Presiding Justice Knecht and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) Plaintiff failed to allege facts sufficient to state a cause of action for either
unjust enrichment or intentional infliction of emotional distress. (2) The trial court
abused its discretion in dismissing plaintiff's complaint with prejudice.

¶ 2    Plaintiff, Wendy Jablow, appeals from the trial court's dismissal, pursuant to

section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2018)), of her

complaint against defendants, Stephen Marsh and Marsh's landscaping business, Custom

Services Development Corporation (CSDC). On appeal, plaintiff argues the court erred in

dismissing her complaint because she alleged facts sufficient to state a cause of action for unjust

enrichment and intentional infliction of emotional distress. Alternatively, plaintiff contends the

court abused its discretion in dismissing her complaint with prejudice rather than allowing her

leave to file an amended complaint. We affirm in part, reverse in part, and remand with directions.

¶ 3                                                    I. BACKGROUND

¶ 4          In June 2020, plaintiff filed a five-count complaint against defendants, alleging: (1) intentional infliction of emotional distress (count I), (2) negligent infliction of emotional distress (count II), (3) breach of an oral contract (count III), (4) unjust enrichment as to Marsh (count IV), and (5) unjust enrichment as to CSDC (count V). We will discuss the allegations in the complaint that are relevant to the issues raised on appeal.

¶ 5          Plaintiff, who was 57 years old at the time of filing, is a certified public accountant (CPA) with college degrees in business administration and economics. Plaintiff had been married previously. She worked for approximately ten years as a "senior officer at a Fortune 500 Company" and later became self-employed as a management consultant. Plaintiff charges "no less" than $175 per hour for her consulting services. Defendant Marsh is self-employed at his wholly-owned corporation, CSDC, which "performs landscaping design and upkeep services for various clients."

¶ 6          In November 2018, plaintiff and Marsh met through an online dating service. During their initial conversations, Marsh learned of plaintiff's "particular vulnerabilities" related to her fear of abandonment and past traumas, including that she suffered from depression. Marsh also learned about plaintiff's "prior employment history and skills." In January 2019, Marsh visited plaintiff at her home in Wilmette, where he "made sexual advances upon [plaintiff], which were accepted." The following month, plaintiff began visiting Marsh at his home in Rantoul. The parties "explicitly agreed, in part because of the potential for harm, that neither would leave the other romantically without discussing same." In March and April 2019, Marsh

"continued to seek to build emotional dependence and exploit [plaintiff's] emotional vulnerabilities."

¶ 7        During this time, Marsh "introduced" plaintiff to CSDC's business operations, and he began to speak of a future with plaintiff and spoke about marriage. On multiple occasions throughout the summer of 2019, Marsh brought plaintiff to CSDC's office space and "asked for her assistance with his business needs." Plaintiff ultimately performed "invoicing, accounts payable, staffing, quickbooks entry, and advertising" services for CSDC. The services were performed "at [Marsh's] request or based on his stated needs of CSDC." Plaintiff provided "no less than 40 hours of services" that resulted in CSDC receiving "in excess of $45,000.00 worth of revenue." Also in the summer of 2019, Marsh gave plaintiff a key to his home and to CSDC's office space.

¶ 8        In late August 2019, Marsh visited plaintiff at her home before she traveled to Maine for her consulting business. Plaintiff and Marsh made plans to see one another after her trip so they could discuss moving in together. However, a few days later, when plaintiff returned, Marsh "refused her phone call[s] and refused to see [her] in person." On September 7, 2019, Marsh informed plaintiff he was "sleeping with someone else and would not be needing her services further. [Marsh] then proceeded to wholly extricate [plaintiff] from his life, refusing to respond to reasonable requests to see [her] and discuss the matter."

¶ 9        With respect to count I, asserting a claim of intentional infliction of emotional distress, plaintiff alleged that "[b]y virtue of the months of trust-building and intermingling of personal and economic affairs, which induced reliance, only [to] advise of an affair and cease all contact at such time as was known it would cause severe emotional damage, *** [Marsh's] actions were extreme and outrageous." Plaintiff further alleged that, "[b]y virtue of [her] existing

emotional state," Marsh knew plaintiff was "particularly susceptible to acts of emotional and mental cruelty and emotional violence."

¶ 10    As for counts IV and V, asserting claims of unjust enrichment as to Marsh and CSDC, respectively, plaintiff alleged CSDC received "[t]ens of thousands of dollars of income" from her services and "retention of [the] benefits, in light of [Marsh's] course of conduct, violates the fundamental principles of good conscience."

¶ 11    In July 2020, defendants filed a combined motion to dismiss the complaint pursuant to section 2-615 of the Code (735 ILCS 5/2-615 (West 2018)) and motion for sanctions pursuant to Illinois Supreme Court Rule 137 (eff. Jan. 1, 2018). In November 2020, the trial court entered a written order granting defendants' section 2-615 motion to dismiss but denying the motion for sanctions. With respect to the latter motion, the court stated it did not believe sanctions were warranted but that "[t]he appropriate remedy is dismissal with prejudice."

¶ 12    This appeal followed.

¶ 13                                    II. ANALYSIS

¶ 14    On appeal, plaintiff argues the allegations in her complaint were sufficient to state a cause of action for unjust enrichment and intentional infliction of emotional distress. In the alternative, she contends the trial court abused its discretion in dismissing her complaint with prejudice, denying her the opportunity to file an amended complaint.

¶ 15            A. Plaintiff Failed to State a Cause of Action for Either
          Unjust Enrichment or Intentional Infliction of Emotional Distress

¶ 16    Plaintiff asserts the court erred in granting defendants' section 2-615 motion to dismiss because she adequately stated a claim for unjust enrichment and intentional infliction of emotional distress.

¶ 17                    1. *Section 2-615 and the Standard of Review*

- 4 -

¶ 18        "A motion to dismiss under section 2-615 of the Code challenges the legal sufficiency of a complaint based on defects apparent on its face." *Jane Doe-3 v. McLean County Unit District No. 5 Board of Directors*, 2012 IL 112479, ¶ 15, 973 N.E.2d 880. When reviewing an order granting such a motion, "the critical question is whether the allegations in the complaint, construed in the light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief may be granted." *Id.* ¶ 16. Moreover, all well-pleaded facts in the complaint must be taken as true. *Id.* Dismissal is proper in this context "only where no set of facts can be proved which would entitle the plaintiff to recovery." *Id.* We review the trial court's decision *de novo*. See *id.* ¶ 15.

¶ 19                        2. *Unjust Enrichment*

¶ 20        Plaintiff first argues she pleaded sufficient facts to state a cause of action for unjust enrichment.

¶ 21        "To state a cause of action based on a theory of unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *HPI Health Care Services, Inc. v. Mt. Vernon Hospital, Inc.*, 131 Ill. 2d 145, 160, 545 N.E.2d 672, 679 (1989). "Unjust enrichment applies where: (1) a party performs a service which benefits another party; (2) the benefitting party accepts the benefit; and (3) the circumstances indicate that the service was not intended to be gratuitous." (Internal quotation marks omitted.) *First American Title Insurance Co. v. TCF Bank, F.A.*, 286 Ill. App. 3d 268, 275, 676 N.E.2d 1003, 1009 (1997).

¶ 22        Here, we find plaintiff failed to state a claim for unjust enrichment because the facts alleged in her complaint demonstrate her services were intended to be gratuitous.

According to the allegations in her complaint, plaintiff and Marsh were in a dating relationship and had discussed the possibility of marriage at some point. During the course of their romantic relationship, Marsh introduced plaintiff to the operations of CSDC and "asked for her assistance with his business needs." Plaintiff agreed to help Marsh and ultimately "performed no less than 40 hours of services for CSDC." However, nothing in the complaint suggests these services were intended to be anything other than gratuitous. Plaintiff does not allege that the parties discussed compensation for her services at any time. Moreover, there are no allegations plaintiff was fraudulently induced to perform the services or that she did so under some form of duress or undue influence, such that it would be unjust for defendants to retain the benefit conferred by plaintiff. See *Alliance Acceptance Co. v. Yale Insurance Agency, Inc.*, 271 Ill. App. 3d 483, 492, 648 N.E.2d 971, 977 (1995). Accordingly, we cannot say the trial court erred in finding the allegations in the complaint failed to state a claim for unjust enrichment.

¶ 23                                    3. *Intentional Infliction of Emotional Distress*

¶ 24         Plaintiff next argues she stated a cause of action for intentional infliction of emotional distress and the court erred in finding she failed to adequately allege extreme and outrageous conduct on the part of Marsh. Specifically, plaintiff argues in her brief that, "given what Marsh knew about [her] regarding her prior trauma and effects of abrupt termination of the relationship, exploiting [her] services for financial gain and then destroying her mental and emotional state by announcing an affair and refusing further interaction is enough to make a potential juror find the conduct outrageous." We disagree.

¶ 25         The tort of intentional infliction of emotional distress is comprised of three elements: "First, the conduct involved must be truly extreme and outrageous. Second, the actor must either intend that his conduct inflict severe emotional distress or know that there is at least a

high probability that his conduct will cause severe emotional distress. Third, the conduct must in fact cause severe emotional distress." *Schweihs v. Chase Home Finance, LLC*, 2016 IL 120041, ¶ 50, 77 N.E.3d 50. Intentional infliction of emotional distress is not available to redress "mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Restatement (Second) of Torts § 46, cmt. d, at 73 (1965). "It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which could entitle the plaintiff to punitive damages for another tort." *Id.* Instead, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.*

¶ 26    With respect to the first element, which is the only element the trial court found plaintiff failed to adequately allege, courts have found "that the extreme and outrageous nature of the conduct may arise from the defendant's abuse of some position which gives him actual or apparent authority over the plaintiff or the power to affect the plaintiff's interests." *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 21, 607 N.E.2d 201, 211 (1992) (citing *McGrath v. Fahey*, 126 Ill. 2d 78, 86-87, 533 N.E.2d 806, 809-10 (1988)); see also Restatement (Second) of Torts § 46, cmt. e, at 73 ("In particular[,] police officers, school authorities, landlords, and collecting creditors have been held liable for extreme abuse of their position."). Additionally, the extreme and outrageous nature of the conduct may arise from the defendant's knowledge that the plaintiff is particularly or peculiarly susceptible to emotional distress. See *Kolegas*, 154 Ill. 2d at 21. "Behavior that might otherwise be considered merely rude, abrasive or inconsiderate, may be deemed outrageous if the defendant knows that the plaintiff is particularly susceptible to

emotional distress." *Id.* However, even under these circumstances, "major outrage *** is still essential to the tort." *Public Finance Corp. v. Davis*, 66 Ill. 2d 85, 94, 360 N.E.2d 765, 769 (1976).

¶ 27    Here, in support of her claim for intentional infliction of emotional distress, plaintiff alleged that, "[b]y virtue of the months of trust-building and intermingling of personal and economic affairs, which induced reliance, only [to] advise of an affair and cease all contact at such time as was known it would cause severe emotional damage, *** [Marsh's] actions were extreme and outrageous." Plaintiff further alleged that, "[b]y virtue of [her] existing emotional state," Marsh knew she was "particularly susceptible to acts of emotional and mental cruelty and emotional violence."

¶ 28    We find Marsh's conduct, as alleged in the complaint, cannot be characterized as "truly extreme and outrageous" for purposes of a claim for intentional infliction of emotional distress, and plaintiff's arguments to the contrary are unpersuasive. First, Marsh's alleged actions did not involve him abusing "some position which gives him actual or apparent authority over *** plaintiff or the power to affect [her] interests." *Kolegas*, 154 Ill. 2d at 21. Instead, plaintiff appears to be a highly educated and successful professional who voluntarily engaged in a romantic relationship. Moreover, although plaintiff alleges she suffers from depression and has been traumatized by previous abandonments, this "particular susceptibility" to emotional distress, which was known by Marsh, also does not elevate his conduct to the level of being truly extreme and outrageous. As discussed above, even when a defendant knows of another person's particular susceptibility, "major outrage *** is still essential." *Public Finance Corp.*, 66 Ill. 2d at 94. While Marsh's conduct as alleged in the complaint may be described as that of a cad, we cannot say it sparks a sense of "major outrage." Accordingly, we find plaintiff failed to

adequately allege conduct that was truly extreme and outrageous, and her claim for intentional infliction of emotional distress, as pleaded, is legally insufficient as a result.

¶ 29                                B. The Trial Court
Erred in Dismissing the Complaint With Prejudice

¶ 30        Plaintiff argues in the alternative that the trial court erred in dismissing her complaint with prejudice, denying her the opportunity to file an amended complaint. The trial court's decision to dismiss a complaint with prejudice is reviewed for an abuse of discretion. See, *e.g.*, *Vogt v. Round Robin Enterprises, Inc.*, 2020 IL App (4th) 190294, ¶ 15, 163 N.E.3d 812.

¶ 31        Generally, a successful section 2-615 motion to dismiss "will not result in a final disposition of the case." *Smith v. Central Illinois Regional Airport*, 207 Ill. 2d 578, 584, 802 N.E.2d 250, 254 (2003). "That is so because there exists in [Illinois] a policy, long adhered to by our courts, that favors an adequate and appropriate hearing of a litigant's claim on the merits***." *Id.*; see also *Gajda v. Steel Solutions Firm, Inc.*, 2015 IL App (1st) 142219, ¶ 31, 39 N.E.3d 263 ("[T]he court favors granting leave to amend a complaint so that the plaintiffs can fully present their cause.").

¶ 32        Here, we find the trial court abused its discretion by dismissing plaintiff's complaint with prejudice. A review of the record demonstrates (1) plaintiff was not given the opportunity to file an amended pleading, (2) defendants' motion to dismiss was granted in the absence of a hearing at which she could have requested leave to replead, and (3) the court dismissed the complaint *with prejudice* in the absence of such a request by defendants. Under the circumstances, we cannot say plaintiff was given a fair opportunity to address the pleading deficiencies noted by the court.

¶ 33                                III. CONCLUSION

¶ 34        For the reasons stated, we affirm the trial court's judgment with respect to its finding plaintiff failed to state a cause of action for unjust enrichment or intentional infliction of emotional distress. However, we reverse that portion of the court's judgment dismissing the complaint with prejudice and remand with directions that plaintiff be given the opportunity to file an amended complaint.

¶ 35        Affirmed in part, reversed in part, and remanded with directions.